j5g2van1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,                    New York, N.Y.

            v.                               18 Cr. 30(PAC)

PAUL VAN MANEN and KENNETH
CHARLTON,

            Defendants.
------------------------------x              Trial

                                             May 16, 2019
                                             9:00 a.m.
Before:

                    HON. PAUL A. CROTTY,

                                             District Judge
                                             - and a Jury-

                         APPEARANCES
GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  JESSICA K. FENDER
     RYAN B. FINKEL
     CATHERINE E. GHOSH
     Assistant United States Attorneys

QUIJANO & ENNIS, P.C.
     Attorney for Defendant Van Manen
BY:  PETER E. QUIJANO
     ANNA N. SIDERIS

O'NEILL & HASSEN
     Attorney for Defendant Charlton
BY:  GRAINNE E. O'NEILL

THE LAW OFFICE OF CARLOS M. SANTIAGO
     Attorney for Defendant Charlton
BY:  CARLOS M. SANTIAGO, JR.


ALSO PRESENT:

MADISON DUNBAR, Paralegal, U.S. Attorney's Office
WILLIAM COLEMAN, Paralegal, U.S. Attorney's Office
LILY LAU, Paralegal, Quijano & Ennis

j5g2van1

 1              (Trial resumed; jury not present)

 2              THE COURT:  Good morning.  Please be seated.  Good

 3    morning, all.

 4              MR. FINKEL:  Good morning.

 5              MS. O'NEILL:  Good morning.

 6              THE COURT:  Do you want to get started?  The jury is

 7    here.

 8              MR. QUIJANO:  One thing, your Honor.

 9              Your Honor, I believe I left my exhibits on the table.

10    I don't see them.  I don't think I took them home.  I believe

11    most of them can be recreated.  They were government exhibits.

12    I just discovered this.

13              THE COURT:  Okay.  Anybody know anything about it?

14              MR. FINKEL:  We don't have them.

15              MR. QUIJANO:  No, I know that.

16              THE COURT:  I don't think that was the question.

17              MR. QUIJANO:  I was not suggesting that.

18              MR. FINKEL:  Beyond that, the government has nothing

19    to offer.

20              MS. O'NEILL:  We will check in our papers.

21              MR. QUIJANO:  Meanwhile, maybe, could I ask you

22    possibly, most of them were government exhibits.  Do you think

23    you --

24              MR. FINKEL:  We can talk about that.  The parties will

25    work together to try to resolve that problem.

j5g2van1

1      But while we are putting things on the record, your

2    honor, just two things to note from the government's

3    perspective:

4      One, Exhibit 301X, was not on the disk and therefore

5    has not actually been offered in evidence but is on the record

6    as being offered in evidence.  We noticed this as we were going

7    through the exhibits last night.  We ask the court to remove

8    that 301X from evidence.

9      THE COURT:  Move it into evidence?

10      MR. FINKEL:  Take it out of being in evidence.  It

11    doesn't actually exist, but it is on the court transcript as

12    being in evidence.

13      THE COURT:  Okay.  It is out of evidence.

14      MR. FINKEL:  And, second, 507 and 511 are stipulations

15    that the parties had entered into.  The government has not

16    offered in all of the pieces of that stipulation.  There are a

17    couple of paragraphs that pertain to certain drug seizures

18    which the government did not offer.  Therefore, we prepared

19    redacted versions of those stipulations to be sent back to the

20    jury after the charge.

21      THE COURT:  Okay.

22      MR. QUIJANO:  Your Honor --

23      THE COURT:  Have the defendants seen those redacted

24    charges?

25      MR. FINKEL:  We will certainly provide them.

j5g2van1

1          MR. QUIJANO:  Ms. Sideris had an unexpected family

2     issue.  We can certainly start without her.  She should be here

3     in ten minutes.

4          THE COURT:  If you don't mind, I would like to get

5     started.

6          MR. QUIJANO:  No, no, that's perfectly fine, of

7     course.

8          MR. FINKEL:  Finally, your Honor, the government

9     prepared a trial indictment and shared it with defense counsel,

10    and that will be ready for the jury as well.

11         THE COURT:  Okay.  Fine.  Thank you.

12         MR. FINKEL:  Thank you.

13         THE COURT:  Is Ms. Ghosh going to join us?

14         MS. FENDER:  She is working on finalizing the exhibits

15    to go back to the jury.  We don't need to wait.

16         THE COURT:  Okay.

17              (Continued on next page)

18

19

20

21

22

23

24

25

j5g2van1

1          (Jury present)

2          THE COURT:  Good morning.  Please be seated.

3          I am now going to read to you the instructions on the

4     law.  You are going to be familiar with some of these terms

5     because they were mentioned at the *voir dire* and the

6     preliminary instructions, and yesterday, in closing arguments

7     of the parties, there were references to the instructions that

8     I was going to give.  You should know that all of the parties

9     have seen advance copies of these instructions.

10          So I always start by saying how important your service

11     is to our country and our system of justice.  You, the jury,

12     have been most conscientious in your attendance, your

13     punctuality, and the complete attention that you have given

14     during the trial.

15          As I say, I am going to read these instructions to you

16     now, but I wanted you to know that I am going to send the

17     instructions into your room, so you do not have to take notes

18     as you listen.  As a matter of fact, I prefer it if you didn't

19     take notes because you will have the actual instructions with

20     you in the jury room.

21          Do not single out any particular instruction as alone

22     stating the law; you should consider, instead, my instructions

23     as a whole.

24          You are about to start your deliberations now.  You

25     have heard all of the evidence, as well as the final, or

j5g2van1

closing, arguments of the lawyers for the parties.  Now it is
my duty to instruct you as to the law that will govern your
deliberations.  As I told you at the start of the case, and as
you agreed, it is your duty to accept my instructions of the
law and to apply them to the facts as you determine them.

        Regardless of any opinion that you may have as to what
the law may be or ought to be, it is your sworn duty to follow
the law as I give it to you.  Also, if any other attorney or
other person has stated a legal principle different from any
that I state to you in my instructions, it is my instructions
that you must follow.  You will begin your deliberations after
these instructions.

        Your duty is to decide the factual issues in this case
and arrive at a verdict.  The jury is the sole and exclusive
judges of the facts.  You decide the weight of the evidence,
the credibility of the witnesses.  You resolve such conflicts
as there may be in the testimony, and you draw whatever
reasonable inferences you decide to draw from the facts as you
determine them.

        In determining the facts, you must rely upon your own
recollection of the evidence.  None of what the lawyers have
said in their opening statements, their closing arguments,
their questions, or objections is evidence.  The lawyers are
not sworn as witnesses.  They do not testify.  They make
arguments about what conclusions you should draw from the

j5g2van1

1    evidence or lack of evidence.  But as I said, that is

2    argumentation, not evidence.  And the same applies to me.

3    Anything that I may have said is not evidence.  I have allowed

4    you to take notes but, as I said earlier, when I did that, your

5    notes are not evidence either.

6            The evidence before you consists of just two things:

7    the testimony given by the witnesses that was received in

8    evidence and the exhibits that were received in evidence.

9            Testimony consists of the answers that were given by

10   the witnesses to the questions that were allowed.  The

11   questions themselves are not evidence.  It is the answers to

12   the questions that count.  Also, as I instructed you at the

13   beginning of this case, and I am sure you complied with my

14   instruction, anything you may have seen or heard about this

15   case outside the courtroom is not evidence and must be entirely

16   disregarded.

17           It is the duty of the attorney for each party to

18   object when the other party offers testimony or other evidence

19   that the attorney believes is not properly admissible.  Counsel

20   also have the right and duty to ask the court to make rulings

21   of law and to request conferences out of the hearing of the

22   jury.  All such questions of law must be decided by me.  You

23   should not show any prejudice against any party or attorney

24   because the attorney objected to the admissibility of evidence,

25   or asked for a conference out of your hearing, or asked me for

j5g2van1

1  a ruling on the law.

2       The testimony and documents that have been admitted

3  into evidence are appropriate for your consideration.  You may

4  consider all the evidence that has been admitted.

5       I ask you to draw no inference from my rulings or from

6  the fact that, upon occasion, I asked questions of certain

7  witnesses.  My rulings were not more than applications of the

8  law and my questions were only intended for clarification or to

9  expedite matters.  You are expressly to understand that I have

10  no opinion as to the verdict you should render in this case.

11       You are to perform your duty of finding the facts

12  without bias or prejudice as to any party.  You are to perform

13  your duty with an attitude of complete fairness and

14  impartiality.  This case is important to both parties.

15  Mr. Van Manen and Mr. Charlton are charged with a serious

16  crime.  They have pleaded not guilty.  It is important to the

17  government, too.  Enforcement of criminal laws is a prime

18  concern of the government.

19       The fact that the prosecution is brought in the name

20  of the United States of America entitles the government to no

21  greater consideration than that accorded to any other party.

22  By the same token, it is entitled to no less consideration.

23  All parties, whether the government or individual, stand as

24  equals before the court.

25       It would be improper for you to consider, in reaching

j5g2van1

your decision as to whether the government has sustained its

burden of proof, any personal feelings you may have about

Mr. Van Manen's and Mr. Charlton's race, religion, national

origin, gender, sexual orientation, or age.  Similarly, it

would be improper for you to consider any personnel feelings

you may have about the race, religion, national origin, gender,

sexual orientation, or age of any witness or anyone else

involved in this case.  Each defendant is entitled to the

presumption of innocence, and the government has the burden of

proof, as I will discuss in more detail in a moment.  It would

be equally improper for you to allow any feelings you might

have about the nature of the crime charged to interfere with

your decision-making process.

          Do not be swayed by sympathy.  Rather, the crucial

question that you must ask yourselves as you review the

evidence is:  Has the government proved the guilt of each of

Mr. Van Manen and Mr. Charlton beyond a reasonable doubt?

          You cannot let bias, prejudice, fear, disgust,

sympathy, or any other irrelevant considerations interfere with

your thinking.  That might interfere with your obligation to

arrive at a true and just verdict, so do not be guided by

anything except clear thinking and calm analysis of the

evidence.  Sympathy or feeling sorry should play no role in

your deliberations.

          You should also not consider any personal feelings you

j5g2van1

 1    may have about the attorneys who represented the parties in

 2    this matter.  As I indicated at the beginning of this trial,

 3    the lawyers and other participants at the counsel table have

 4    been instructed not to have any communication with you as

 5    jurors.  If, due to the congestion in the courthouse, you ran

 6    into counsel and they ignored you, they did so because they

 7    were supposed to ignore you.  That's the rule.  This should not

 8    influence your decision regarding Mr. Van Manen's or

 9    Mr. Charlton's innocence or guilt in any way.

10              Now a word about punishment.  The potential punishment

11    of the two defendants is not a jury concern and should not, in

12    any sense, enter into or influence your deliberations.  The

13    duty of imposing a sentence rests exclusively with the court.

14    Your function is to weigh the evidence, or lack of evidence, in

15    the case and to determine whether or not the government has

16    proved that Mr. Van Manen, Mr. Charlton, or both, are guilty

17    beyond a reasonable doubt.

18              I told you before -- and I'm going to tell you

19    again -- Mr. Van Manen and Mr. Charlton are presumed innocent

20    until proven guilty beyond a reasonable doubt.  Mr. Van Manen

21    and Mr. Charlton have pleaded not guilty to the charges alleged

22    in the indictment.  As a result, the government has the burden

23    to prove each defendant's guilt beyond a reasonable doubt.

24    This burden never shifts from the government to Mr. Van Manen

25    and Mr. Charlton for the simple reason that the law presumes

j5g2van1

each defendant innocent and never imposes upon any defendant in

a criminal case the burden or duty of calling any witness or

producing any evidence.

          In other words, Mr. Van Manen and Mr. Charlton start

with a clean slate.  They are presumed innocent until such time

that you, the jury, are unanimously satisfied that the

government has proved Mr. Van Manen, Mr. Charlton, or both,

guilty beyond a reasonable doubt.  If the government fails to

sustain this burden with respect to either Mr. Van Manen and

Mr. Charlton or both, you must find either of them, or both of

them, not guilty.

          The government must prove each defendant guilty beyond

a reasonable doubt.  The question then is:  What is a

reasonable doubt?  The words almost define themselves.  It is a

doubt based upon reason.  It is a doubt that a reasonable

person has after carefully weighing all of the evidence.  Proof

beyond a reasonable doubt must, therefore, be proof of such a

convincing character that a reasonable person would not

hesitate to rely and act upon it in the most important of his

or her own affairs.

          A reasonable doubt is not a guess or a whim, it is not

speculation or suspicion, it is not an excuse to avoid the

performance of an unpleasant duty, and it is not sympathy.  The

law does not require that the government prove guilt beyond all

possible doubt.  Proof beyond a reasonable doubt is sufficient

j5g2van1

1    to convict.

2         If, after a fair and impartial consideration of all of

3    the evidence, you have a reasonable doubt as to the guilt of

4    Mr. Van Manen, Mr. Charlton, or both, it is your duty to find

5    the defendant you are considering not guilty.  On the other

6    hand, if after a fair and impartial consideration of all of the

7    evidence, you are satisfied that the government has met its

8    burden of proving Mr. Van Manen, Mr. Charlton, or both

9    defendants' guilt beyond a reasonable doubt, it is your duty to

10   find that defendant, or both defendants, guilty.

11        That concludes my instructions on general principles

12   that you have to follow.

13        I turn now to instructions on evidence.  Let me remind

14   you again that Mr. Van Manen and Mr. Charlton were formally

15   charged in an indictment.  They are entitled to know the

16   charges against them.  But as I instructed you when the trial

17   began, the indictment is not evidence.  It merely describes the

18   charges against Mr. Van Manen and Mr. Charlton and may not be

19   considered by you as any evidence of guilt.  You are to give no

20   weight to the fact that a grand jury properly returned an

21   indictment against Mr. Van Manen and Mr. Charlton.  I am not

22   going to read the indictment to you because I'm going to send

23   the indictment in to the jury room and you can look at it

24   yourself.

25        Now, a word or two about direct and circumstantial

j5g2van1

evidence.  In deciding whether Mr. Van Manen, Mr. Charlton, or
both, are guilty or not guilty, you may consider both direct
evidence and circumstantial evidence.

Direct evidence is evidence that proves a disputed
fact directly.  For example, when a witness testifies to what
he or she saw, heard, or observed, that is called direct
evidence.

Circumstantial evidence is evidence that tends to
prove a disputed fact by proof of other facts.  To give you a
simple example, suppose that when you came into the courtroom
today, this is a true example, the sun was shining and it was a
nice day.  But now the courtroom blinds are drawn and you
cannot look outside.  As you are sitting here, someone walks in
with a dripping wet umbrella and, soon after, someone walks in
with a dripping wet raincoat.  Now, on our assumed facts, you
cannot look outside of the courtroom and see whether it is
raining, so you have no direct evidence of that fact.  But, on
the combination of the facts about the umbrella and the
raincoat, it would be reasonable for you to conclude that it
had started to rain.  That is all there is to circumstantial
evidence.  Using your reason and experience, you infer from
established facts the existence or nonexistence of some other
facts.

An inference is the deduction or conclusion that
reason and common sense prompt a reasonable mind to draw from

j5g2van1

the facts that have been proven by the evidence.  Not all
logically possible conclusions are legitimate or fair
inferences.  Only those inferences to which the mind is
reasonably led or directed are fair inferences from direct or
circumstantial evidence in this case.  Whether or not to draw a
particular inference is, of course, a matter expressly for you
to decide, as are all determinations of fact.

        Many material facts, such as state of mind, are rarely
susceptible of proof by direct evidence.  There is no way for
us to look into people's minds, so those facts are established
by circumstantial evidence and the inferences the jury draws
from them.  The law makes no distinction between direct and
circumstantial evidence.  Circumstantial evidence is of no less
value than direct evidence and you can consider either or both,
and give them such weight as you conclude is warranted.

        A word or two about witness credibility.  It must be
clear to you by now that counsel for the parties are asking you
to draw very different conclusions about the significant
factual issues in this case.  An important part of your
decision will involved making judgments about the testimony of
the witnesses you have listened to and observed.  In making
these judgments, you should carefully scrutinize all of the
testimony of each witness, the circumstances under which each
witness testified, and any other matter in evidence that may
help you decide the truth and the importance of each witness's

j5g2van1

testimony.  For example, was the testimony of a witness

corroborated by the testimony of another witness or another

exhibit or a recording which was received in evidence?

          Your decision whether or not to believe a witness may

depend on how that witness impressed you.  Was the witness

candid, frank, and forthright or did the witness seem to be

evasive or suspect in some way?  How did the witness testifying

on direct examination compare with how the witness testified on

cross-examination?  Was the witness consistent or

contradictory?  Did the witness appear to know what he or she

was talking about?  Did the witness strike you as someone who

was trying to report his knowledge or her knowledge accurately?

What was the witness's demeanor like?  These are the examples

of the kind of common sense questions you should ask yourself

in deciding whether a witness or is not truthful.

          In addition, you may consider whether a witness has

any possible bias or relationship with a party, or any possible

interest in the outcome of the case.  Such a bias,

relationship, or interest does not necessarily make the witness

unworthy of belief.  They are simply factors that you should

consider.

          In making a determination of witness credibility, you

may consider whether the witness purposefully made a false

statement or whether it was an innocent mistake.  You may also

consider whether an inconsistency concerns an important fact or

j5g2van1

merely a small detail, as well as whether the witness had an

explanation for the inconsistency and, if so, whether that

explanation appealed to your common sense.  If you find that a

witness has testified falsely as to any material fact, you may

reject that witness's testimony in its entirety, or you may

accept those parts that you believe to be truthful or that are

corroborated by other independent evidence in the case.

Further, you may consider whether a witness has been previously

untruthful, including lying under oath in another proceeding in

determining how much of his or her testimony, if any, you wish

to believe.

        You should also consider whether the witness had an

opportunity to observe the facts the witness testified about,

whether the witness was under the influence of any substances

when the event occurred, and what impact that might have on the

witness's recollection or perception of the events, and whether

the witness's recollection of the facts stands up in light of

the other evidence in this case.

        In other words, what you must try to do in deciding

credibility is to size up a person just as you would in any

important matter where you are trying to decide if a person is

truthful, straightforward, and accurate in his or her

recollection.

        Now a word about preparation of witnesses.  You have

heard testimony during the trial that witnesses have discussed

j5g2van1

the facts of the case and their testimony with lawyers before

the witnesses appeared in court.  You may consider that fact

when you are evaluating a witness's credibility, but there is

nothing either unusual or improper about a witness meeting with

lawyers before testifying so that the witness can be aware of

all of the subjects that will be covered, focus on those

subjects, and have the opportunity to review the relevant

exhibits and documents before being questioned about them.

Such consultations help conserve your time and the court's

time.  The weight you give to the fact or the nature of the

witness's preparation for his or her testimony and what

inferences you draw from such preparation are matters

completely within your discretion.

It is for you, the jury, and for you alone, not the

lawyers or the witnesses or me, as the judge, to decide the

credibility of witnesses who appeared here and the weight their

testimony deserves.  After making your own judgment or

assessment concerning the credibility of a witness, you can

then attach such importance or weight to his or her testimony,

if any, that you feel it deserves.  You will then be in a

position to decide whether the government has proved the

charges beyond a reasonable doubt.

With respect to law enforcement officials, you have

heard testimony from a number of law enforcement officials.

The government's law enforcement witnesses do not deserve any

j5g2van1

more or less consideration, or greater or lesser weight, than

of any other witness.  In this context, it is appropriate for

defense counsel to try to attack the credibility of such a

witness on the ground that his or her testimony may be colored

by a personal or professional interest in the outcome of the

case.  It is up to you to accept or reject the testimony of

each law enforcement witness and to give such testimony the

weight, if any, it deserves.

          With regard to the expert witnesses, you have heard

testimony from three expert witnesses -- Dr. Terra Cederroth,

from the Office of the Chief Medical Examiner; and Brittany

Christie and Dimitri DeVito from the New York City Police

Department labs.  An expert is someone who, by education or

experience, has acquired learning or experience in a science or

a specialized area of knowledge.  These witnesses were

permitted to give their opinions as to relevant matters about

which they have special knowledge, skill, experience, and

training.  This testimony was presented to you on the theory

that someone who is experienced in this field can assist you in

understanding the evidence or in reaching an independent

decision on the facts.

          Your role in judging credibility applies to experts as

well as to the other witnesses.  You should consider the expert

opinions that were received in evidence in this case and give

them as much or as little weight as you may think they deserve.

j5g2van1

If you should decide that the opinion of an expert was not

based on sufficient education or experience or on sufficient

data, or if you should conclude that the trustworthiness or the

credibility of the expert is questionable for any reason, or if

the opinion of the expert was outweighed in your judgment by

other evidence in the case, you might disregard the opinion of

the expert entirely or in part.

If, however, you find that the opinion of an expert is

based on sufficient data, education, and experience, and the

other evidence does not give you reason to doubt the expert's

conclusion, you would be justified in relying on that expert's

testimony.

Now, with regard to cooperating witnesses, let me say

a few things you may want to consider during your deliberation

on the subject of what we have been calling cooperating

witnesses. You have heard testimony from three individuals --

Shaun Sullivan, Jasmin Cejovic, and Anthony Francese -- who are

considered cooperating or accomplice witnesses. There has been

a great deal said about these so-called accomplice witnesses in

the summations of counsel and whether or not you should or

should not believe them.

The government argues, as it is permitted to do, that

it must take the witnesses as it finds them. It argues that

only people who themselves take part in criminal activity have

the knowledge required to show criminal behavior by others.

j5g2van1

1    For those very reasons, the law allows the use of accomplice

2    testimony.  Indeed, it is the law in federal courts that the

3    testimony of accomplices may be enough in itself for

4    conviction, if the jury finds that the testimony establishes

5    guilt beyond a reasonable doubt.

6           However, it is also the case that accomplice testimony

7    is of such nature that it must be scrutinized with great care

8    and viewed with particular caution when you decide how much of

9    that testimony to believe.  The cooperating witnesses are

10   facing fairly long maximum sentences, and mandatory minimums,

11   and are hoping for a reduced sentence.  For those witnesses,

12   the government decides whether to file a motion for a reduced

13   sentence, and the sentencing court, according to its own

14   determination, decides what sentence to ultimately impose.  I

15   must caution you that it is no concern of yours why the

16   government made agreements with these witnesses.  Your sole

17   concern is to decide whether the witnesses have given truthful

18   testimony in this case before you.

19          I have given you some general considerations on

20   credibility, and I will not repeat them here, nor will I repeat

21   all of the arguments made on both sides.  However, let me say a

22   few things that you may want to consider during your

23   deliberations on the subject of accomplices.

24          You should ask yourself whether these so-called

25   accomplices would benefit more by lying or by telling the

j5g2van1

truth.  Was their testimony made up in any way because they
believed or hoped that they would somehow receive favorable
treatment by testifying falsely?  Or did they believe that
their interests would be best served by testifying truthfully?
If you believe that the witness was motivated by hopes of
personal gain, was the motivation one that would cause him to
lie or was it one that would cause him to tell the truth?  Did
this motivation color his testimony?

          In sum, you should look at all of the evidence in
deciding what credence and what weight, if any, you will want
to give to the testimony of the accomplice witnesses.

          In the same vein, you have heard testimony from
government witnesses who have pleaded guilty to charges arising
out of some of the same facts that are at issue in this case.
I instruct you that you are to draw no conclusions or
inferences of any kind about the guilt of the defendants on
trial from the fact that certain prosecution witnesses pled
guilty to charges relating to or similar to the crimes charged
in this case.  Those witnesses' decisions to plead guilty were
personal decisions that they made about their own guilt.  They
may not be used by you in any way as evidence against or
unfavorable to the defendants on trial here.

          You have also heard the testimony from a government
witness, Derek Yung, who testified pursuant to an agreement
with the government that, in exchange for truthful testimony,

j5g2van1

the government agreed not to prosecute that witness for certain
specified crimes that he may have committed.

        The government is permitted to enter into these types
of understandings and is entitled to call as witnesses people
with whom such an agreement is entered.  The fact that the
government has agreed not to prosecute this witness does not
disqualify him from testifying and does not preclude you from
accepting that testimony as true.

        However, the testimony of a witness who has been
promised that he will not be prosecuted should be examined by
you with greater care than the testimony of an ordinary
witness.  You should scrutinize it closely to determine whether
or not it is colored in such a way as to place guilt upon
Mr. Van Manen and/or Mr. Charlton in order to further the
witness's own interests; for, such a witness, confronted with
the realization that he can win his own freedom by helping to
convict another, has a motive to falsify his testimony.  Such
testimony should be received by you with suspicion and you may
give it such weight, if any, as you believe it deserves.

        One final note in this regard.  It is of no concern to
you why the government has entered into such an agreement with
a witness.  Your sole concern is to decide whether Mr. Yung was
giving truthful testimony in this case before you.  In sum, you
should look to all of the evidence in deciding what credence
and what weight, if any, you will give to a witness's

j5g2van1

1    testimony.

2              Now, some of the people who may have been involved in

3    the events leading to this trial are not on trial.  This does

4    not matter.  You may not draw any inferences, favorable or

5    unfavorable, towards the government or the defendants from the

6    fact that certain people, other than the defendants, are not on

7    trial here.  Those matters are wholly outside your concern and

8    have no bearing on your function as jurors.

9              With respect to uncalled witnesses who are equally

10   available to both sides, there are people whose names you have

11   heard during the course of the trial but who do not appear here

12   to testify.  I instruct you that each party has an equal

13   opportunity or lack of opportunity to call any of these

14   witnesses.  Therefore, you should not draw any inferences or

15   reach any conclusions as to what they would have testified to

16   had they been called.  Their absence should not affect your

17   judgment in any way.

18             You should, however, remember my instruction that the

19   law does not impose on a defendant in a criminal case the

20   burden or duty of calling any witnesses or producing any

21   evidence.  The burden remains with the government to prove the

22   guilt of a defendant beyond a reasonable doubt.

23             You may have heard references to the fact that certain

24   investigative techniques were used and that others were not

25   used by the government.  You may consider these facts in

j5g2van1

1  deciding whether the government has met its burden of proof

2  because, as I told you, you should look to all of the evidence

3  or the lack of evidence in deciding whether the defendants are

4  guilty.  However, there is no legal requirement that the

5  government prove its case by any particular means and you are

6  not to speculate as to why the government used the techniques

7  they did or why they did not use other techniques.  The

8  government is not on trial here.  The law enforcement

9  techniques are not your concern.

10         Your concern is to determine whether or not, based on

11  the evidence or lack of evidence here in this case, the guilt

12  of Mr. Van Manen, Mr. Charlton, or both, has been proven beyond

13  a reasonable doubt.

14         With regard to the evidence obtained from searches,

15  you heard testimony in this case about evidence seized in

16  connection with searches conducted by law enforcement officers.

17  Evidence obtained from these searches was properly admitted in

18  this case and may be properly considered by you.  Whether you

19  approve or disapprove of how the evidence was obtained should

20  not enter into your deliberations, because I instruct you that

21  the government's use of this evidence is entirely lawful.

22         You must, therefore, give this evidence full

23  consideration along with all the other evidence in this case in

24  determining whether the government has proved the guilt of

25  Mr. Van Manen, Mr. Charlton, or both, beyond a reasonable

j5g2van1

1    doubt.

2            Now a word about audio and video recordings and

3    transcripts.  Recordings of various conversations have been

4    admitted into evidence.  Whether you approve or disapprove of

5    the recording or interception of those conversations may not

6    enter your deliberation.  I instruct you that these recordings

7    were made in a lawful manner, that no one's rights were

8    violated, that the government's use of the evidence is entirely

9    lawful, and that it was properly admitted into evidence at

10   trial.  You must, therefore, regardless of any personal

11   opinions, give this evidence full consideration along with all

12   of the other evidence in this case in determining whether the

13   government has proved beyond a reasonable doubt the guilt of

14   either Mr. Van Manen, Mr. Charlton, or both.

15           In connection with the recordings that you have heard,

16   you were provided with transcripts of the conversations to

17   assist you while listening to the recordings.  I instruct you

18   that, with the exception of transcripts labeled GX 306ET and GX

19   306FT, all of the other transcripts are not evidence.  The

20   transcripts were provided only as an aid to you in listening to

21   the recording.  It is for you to decide whether the transcripts

22   correctly present the conversations recorded on the recordings

23   that you heard.  If you think you heard something differently

24   than appeared on the transcript, then what you heard is

25   controlling.  If you wish to hear any of the recordings again

j5g2van1

1    or see any of the transcripts, they will be made available to

2    you during deliberations.

3           We have, among other exhibits received in evidence,

4    some documents that are redacted.  "Redacted" means that part

5    of the document was taken out.  You are to concern yourself

6    only with that part of the item that has been admitted into

7    evidence.  You should not consider any possible reason why the

8    other part of it has been deleted.

9           During the trial, there were charts and summaries

10   shown to you.  These charts and summaries were shown to you in

11   order to make the other evidence more meaningful and to aid you

12   in considering the evidence.  They are no better than the

13   testimony or the documents upon which they are based and are

14   not themselves independent evidence.  Therefore, you are to

15   give no greater weight or greater consideration to these

16   schedules or summaries than you would give to the evidence upon

17   which they are based.

18          It is for you to decide whether the charts, schedules,

19   or summaries correctly present the information contained in the

20   testimony and in the exhibits on which they were based.  You

21   are entitled to consider the charts, schedules, and summaries

22   if you find that any of them are of assistance to you in

23   analyzing and understanding the evidence.

24          You have heard evidence in the form of stipulations of

25   testimony, read to you from government exhibits numbered in the

j5g2van1

500 series.  A stipulation of testimony is an agreement among
the parties that, if called as a witness, the party would have
given certain testimony.  You must accept as true the fact that
the witness would have given that testimony.  But it is for
you, however, to determine the effect to be given that
testimony.

    You have also heard evidence in the form of
stipulations of fact.  A stipulation of fact is an agreement
among the parties that a certain fact is true.  You should
regard such agreed facts as true.  It is for you, however, to
determine the effect to be given to any stipulated fact.

    The law does not require any party to call as a
witness all persons who may have been present at any time or
place involved in this case or who may appear to have some
knowledge of the matter in issue at trial.  Nor does the law
require any party to produce as exhibits all relevant papers
and things available to either party during the course of the
trial.

    The government has offered evidence tending to show
that on a different occasion Mr. Charlton engaged in conduct
similar to the charge in the indictment.

    In that connection, let me remind you that
Mr. Charlton is not on trial for committing this act not
alleged in the indictment.  Accordingly, you may not consider
this evidence of the similar act as a substitute for proof that

j5g2van1

Mr. Charlton committed the crime charged.  Nor may you consider this evidence as proof that Mr. Charlton has a criminal personality or bad character.  The evidence of the other similar act was admitted to demonstrate Mr. Charlton's identity, intent, and knowledge, to establish the opportunity or the absence of mistake or accident with regard to the offense charged in Count One, and to demonstrate the background of the conspiracy charged here.  You may consider it only for that limited purpose.

        If you determine that Mr. Charlton committed the act charged in the indictment and the similar act as well, then you may, but you need not draw an inference that, in doing the acts charged in the indictment, Mr. Charlton acted knowingly and intentionally and not because of some mistake, accident, or other innocent reasons.

        Evidence of similar acts may not be considered by you for any other purpose.  Specifically, you may not use this evidence to conclude that because Mr. Charlton committed the other act, he must have committed the act charged in the indictment.

        The defendant in a criminal case never has any duty to testify or come forward with any evidence.  That is because, as I told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.  In this case, Mr. Van Manen and

j5g2van1

1    Mr. Charlton did testify and were subjected to

2    cross-examination just like any other witness.  You should

3    examine and evaluate the testimony just as you would the

4    testimony of any witness with an interest in the outcome of the

5    case.

6              That concludes my instructions on evidentiary matters.

7              I turn now to the substantive law.

8              The defendants, Paul Van Manen and Kenneth Charlton

9    have been formally charged in an indictment containing one

10   count, or charge.  The indictment in this case is not evidence.

11   Let me remind you of that again.  It merely describes the

12   charges made against the defendants.  It is a set of

13   accusations.  It may not be considered by you as evidence of

14   the guilt of the defendants.  Only the evidence or lack of

15   evidence decides that issue.

16             Count One charges that, from at least in or about 2013

17   through in or about January 2018, Mr. Van Manen and

18   Mr. Charlton agreed with each other or others to violate the

19   narcotics laws of the United States.  In summary, Count One

20   charges that each defendant and others conspired to violate the

21   federal criminal laws prohibiting the distribution of and

22   possession with intent to distribute a controlled substance,

23   namely, heroin and fentanyl.

24             Count One also charges against Mr. Van Manen only that

25   the use of the controlled substances distributed by members of

j5g2van1

the conspiracy resulted in (1) the serious bodily injury of
Shaun Sullivan on or about October 5, 2017, and (2) the death
of Michael Ogno on or about December 1, 2017.  We'll discuss
this portion of Count One separately in a few minutes.

Before I explain the crime of conspiracy in more
detail, I want to say something about the dates described in
the indictment.  The indictment charges the conspiracy in Count
One existed from in or about 2013 through in or about January
2018.  It is not essential that the government prove the
conspiracy started and ended on those specific dates.  Indeed,
it is sufficient if you find that, in fact, the conspiracy was
formed and that it existed for some period of time within the
period set forth in the indictment, that is, from 2013 to
January of 2018.

Now let me say a word about the crime of conspiracy.
A conspiracy is kind of a criminal partnership -- a combination
or agreement of two or more persons to join together to
accomplish some unlawful purpose.  The crime of conspiracy to
violate a federal law is an independent offense.  It is
separate and distinct from the actual violation of any specific
federal law, which the law refers to as "substantive crimes."
Accordingly, you may find a defendant guilty of the crime of
conspiracy to violate the narcotics laws of the United States,
even though the actual crime was not committed.  Congress has
deemed it appropriate to make conspiracy, standing alone, a

j5g2van1

separate crime, even if the conspiracy is not successful.  This
is because collective criminal activity poses a greater threat
to the public's safety and welfare than individual conduct and
increases the likelihood of success of a particular criminal
venture.

          To sustain its burden of proof with respect to the
crime of conspiracy, the government must separately prove
beyond a reasonable doubt the following two elements as to this
conspiracy count:

          First, the existence of the conspiracy charged -- that
is, with respect to Count One of the indictment, the existence
of an agreement or understanding to violate the laws of the
United States that make it a crime to distribute and possess
with intent to distribute a controlled substance, that's the
first requirement;

          Second, that either Mr. Van Manen, Mr. Charlton, or
both, knowingly became members of the conspiracy charged, that
is, that either of them knowingly associated themselves with
the conspiracy and participated in the conspiracy to distribute
or possess with intent to distribute narcotics.

          Now let us separately consider these two elements.

          The first element, as I said, is the existence of the
conspiracy.  The first element that the government must prove
beyond a reasonable doubt is that the conspiracy charged in the
indictment existed.  In this instance, the unlawful purpose

j5g2van1

alleged to have been the object of the conspiracy charged in
the indictment is either the distribution of a controlled
substance or the possession of the controlled substance with an
intent to distribute it.

As I explained a moment ago, the essence of the crime
of conspiracy is the unlawful agreement to violate the law.
The gist, or the essence, of the crime of conspiracy is the
agreement or understanding between two or more people to
accomplish some unlawful purpose.  This unlawful agreement or
understanding must be between two or more individuals not
operating under the direction of the government at the time of
the agreement.  The ultimate success of the conspiracy, or the
actual commission of the crime that is the object of the
conspiracy, is not required.

The conspiracy alleged here, therefore, is the
agreement to commit the crime.  That is an entirely separate
and distinct offense from the underlying offense, which the law
calls a "substantive crime."  The crime of conspiracy is
complete once the unlawful agreement is made and the defendant
enters into it.  Accordingly, you may find a defendant guilty
of the crime of conspiracy to distribute a controlled substance
or conspiracy to possess a controlled substance with the intent
to distribute, even though the actual crime was not committed.

To prove a conspiracy, the government is not required
to show that two or more individuals sat around a table and

j5g2van1

entered into a solemn pact, orally or in writing, stating that

they have formed a conspiracy to violate the law and setting

forth the details of the plan and the means by which the

unlawful project is to be carried out or the part to be played

by each conspirator.  Indeed, it would be extraordinary if

there were such a formal document or specific oral agreement.

Common sense tells us that when people in fact

undertake to enter into a criminal conspiracy, a great deal is

left to unexpressed understanding.  From its very nature, a

conspiracy is almost invariably secret in its origin and

execution.  Conspirators do not usually reduce their agreements

to writing or acknowledge them in front of a notary public, nor

do they normally publicly broadcast their plans.  Thus, you may

infer the existence of a conspiracy from the circumstances of

the case and the conduct of the parties involved.

To show that a conspiracy existed, then, it is

sufficient if the evidence shows that two or more person in

some way or manner through any contrivance, explicitly or

implicitly, came to an understanding to violate the law and to

establish an unlawful plan.  Express language or specific words

are not required to indicate assent or attachment to a

conspiracy.  In determining whether there has been an unlawful

agreement, you may consider the acts and conduct of the alleged

conspirators which were done to carry out the apparent criminal

purpose.  The old adage "actions speak louder than words" is

j5g2van1

applicable here.  Often, the only evidence available with

respect to the existence of a conspiracy is that of

disconnected acts on the part of the alleged individual

conspirators.  When taken together and considered as a whole,

however, these acts are capable of showing a conspiracy or

agreement as conclusively as would more direct proof.

In deciding whether the alleged conspiracy in fact

existed, you may consider all the evidence of the acts,

conduct, and declarations of the alleged conspirators and the

reasonable inferences to be drawn from such evidence.  It is

sufficient to establish the existence of the conspiracy if,

after considering all of the relevant evidence, you find beyond

a reasonable doubt that the minds of at least two alleged

coconspirators met in an understanding way and that they

agreed, as I have explained, to work together in furtherance of

the lawful scheme alleged in the indictment.

In short, as far as the first element of the

conspiracy is concerned, the government must prove beyond a

reasonable doubt that at least two alleged coconspirators came

to a mutual understanding, either spoken or unspoken, to

violate the law in the manner charged in the indictment.

Now, the object of the conspiracy is the legal goal

the coconspirators agree or hope to achieve.  The indictment

here charges two objects of the conspiracy in Count One,

namely, distribution of a control substance; two, possession

j5g2van1

1    with intent to distribute a controlled substance.  I will

2    define the terms "distribution" and "possession" for you in a

3    moment.

4           Before I do that, I instruct you that in considering

5    the objects in Count One, the government does not have to prove

6    both the objects charged beyond a reasonable doubt.  Rather, an

7    agreement to accomplish either one of the two objects of the

8    alleged conspiracy is sufficient.  But if you find beyond a

9    reasonable doubt that one, but not both, of the objects were

10   proved, you must be unanimous as to which object you do find to

11   find the defendant you are considering guilty.  That is, you

12   must all be in agreement with respect to at least one of the

13   alleged objects of the conspiracy charged in Count One.  If the

14   government fails to prove at least one of the unlawful objects

15   or objectives of the conspiracy in Count One, then you must

16   find the defendant you are considering not guilty on that

17   conspiracy count.  However, if you find that the conspirators

18   agreed to accomplish any of the objectives charged in the

19   conspiracy, the unlawful purpose element will be satisfied.

20          Mr. Van Manen and Mr. Charlton need not have known the

21   exact nature of the controlled substance -- that is, the type

22   of controlled substance involved in the conspiracy -- rather,

23   it is sufficient to convict if the government proves that (1)

24   the object of the conspiracy was to distribute a controlled

25   substance and (2) the conspiracy involved heroin and/or

j5g2van1

fentanyl.  The government does not have to show that

Mr. Van Manen, Mr. Charlton, or any of their coconspirators

were aware that heroin and/or fentanyl were the object of the

conspiracy.  Again, it is sufficient if they are merely aware

that the objective was to distribute or possess with intent to

distribute a controlled substance.  Further, the government

need not prove the object of the conspiracy was the

distribution or the possession with intent to distribute both

heroin and fentanyl.  However, you must be unanimous, that is,

you must all be in agreement, with respect to which drug or

drugs were involved in the conspiracy.

Further, as a matter of law, both heroin and fentanyl

are "controlled substances."  The purity of the controlled

substance is not important to your determination of

Mr. Van Manen or Mr. Charlton's guilt or nonguilt.  As I will

explain later, however, if you do find that the government has

proven the elements of Count One of the indictment beyond a

reasonable doubt, you will then be asked to make findings about

drug type and quantity.

Now let me define the terms "distribution,"

"possession," and "intent to distribute."

The word "distribution" means the actual,

constructive, or attempted transfer of a controlled substance.

To "distribute" simply means to deliver, to pass over, to hand

over something to another person, or to cause to be delivered,

j5g2van1

passed on, or handed over to another person.  Distribution does not require a sale, but it includes sales.

"Possession."  The legal concept of "possession" may differ from the everyday usage of the term, so let me explain it in some detail.  Actual possession is what most of us think of as possession, that is, having physical custody or control of an object, as I possess this pen.  If you find that the person you are considering had a controlled substance on his person, you may find that he had possession of it.  However, a person need not have actual physical possession, that is, physical custody of the object, in order to be in legal possession of it.  If an individual has the ability to exercise substantial control over an object, even if he does not have the object in his physical custody at a given moment, and that person has the intent to exercise such control, then he is in legal possession of that article.  This is called "constructive possession."

Control over an object may be demonstrated by the existence of a working relationship between one person having the power or ability to control the item and another person who has actual physical custody.  The person having control possesses the item, that is, the controlled substance, because he has an effective working relationship with the people who have actual physical custody of the controlled substance and because he can direct the movement or transfer or the

j5g2van1

1    disposition of the controlled substance.  In addition, an

2    individual may have possession of an item that is not found on

3    his person because that individual has a relationship to the

4    location where the item is maintained.  In this manner, for

5    example, a person may legally possess things that are scattered

6    throughout a number of stores or offices or installations

7    around the country.

8          More than one person can have control over the same

9    narcotics.  The law recognizes that possession may be sole or

10   joint.  If one person alone has actual or constructive

11   possession of a thing, possession is sole.  If more than one

12   person has possession of it, as I have defined "possession" for

13   you, then possession is joint.

14         About "intent to distribute," "possession with intent

15   to distribute" simply means the possession of a controlled

16   substance with the intention or purpose to distribute it to

17   another person or persons.  As I explained to you, to

18   "distribute" means simply to transfer to another.  Basically

19   what you are determining is whether at least some of the drugs

20   in Mr. Van Manen or Mr. Charlton's possession were for their

21   personal use or for the purpose of distribution.

22         Often it is possible to determine whether someone has

23   an intent to distribute from the quantity of drugs that were

24   possessed, although the possession of a large quantity of drugs

25   does not necessarily mean that an individual intended to

j5g2van1

distribute them.  On the other hand, an individual may have

intended to distribute a controlled substance even if he did

not possess a large amount of it.  Remember, as I mentioned

earlier, the ultimate success of the conspiracy or the actual

commission of the crime that is the object of the conspiracy is

not required.  The offense alleged here in Count One is the

conspiracy or agreement to distribute and possess with intent

to distribute a controlled substance.

          If you conclude that the government has proved beyond

a reasonable doubt the existence of the conspiracy charged in

Count One, go on to the next question:  Did Mr. Van Manen,

Mr. Charlton, or both, participate in the conspiracy with

knowledge of its unlawful purpose and in furtherance of its

unlawful objective?

          The government must also prove beyond a reasonable

doubt that each defendant unlawfully, willfully, and knowingly

entered into the conspiracy, that is, that either

Mr. Van Manen, Mr. Charlton, or both, agreed to take part in

the conspiracy with knowledge of its unlawful purpose, and that

he or they agreed to take part in the conspiracy to promote and

cooperate in furtherance of its unlawful objective.

          Now, as to this element, the terms "unlawfully,"

"willfully," and "knowingly" mean that you must be satisfied

that, in joining the conspiracy, assuming that you find that

either Mr. Van Manen, Mr. Charlton, or either, did join the

j5g2van1

conspiracy, the defendant you are considering knew what he was

doing, that is, he took the action in question deliberately and

voluntarily.  The key question is whether either Mr. Van Manen,

Mr. Charlton, or both, joined the conspiracy and an awareness

of at least some of the basic aims and purposes of the unlawful

agreement.  Let's talk about the terms "unlawfully,"

"intentionally," and "knowingly."

          "Unlawfully" simply means contrary to law.  The

defendant need not have known that he was breaking any

particular law or any particular rule, but he must have been

aware of the generally unlawful nature of his acts.

          An act is done "knowingly" and "willfully" if it is

done deliberately and purposefully, that is, a defendant's acts

must have been the product of a conscientious objective, rather

than a product of mistake, accident, mere negligence, or some

other reason, innocent reason.

          The ultimate facts of knowledge and criminal intent,

though subjective, may be established by circumstantial

evidence based upon a person's outward manifestations, words,

conduct, and acts and all the surrounding circumstances

disclosed by the evidence and the rational or logical

inferences that may be drawn therefrom.

          The government contends that the evidence of certain

acts and conversations alleged to have taken place involving

the defendants or in their presence establishes their knowledge

j5g2van1

of the unlawful purpose of the conspiracy beyond a reasonable
doubt.  By pleading not guilty, the defendants deny that they
committed the charged offense.  It is for you to determine
whether the government has established to your satisfaction,
beyond a reasonable doubt, that such knowledge and intent on
the part of Mr. Van Manen, Mr. Charlton, or both, existed.

It is not necessary that Mr. Van Manen and
Mr. Charlton were fully informed as to all the details of the
conspiracy to justify an inference of knowledge on their part.
To have guilty knowledge, Mr. Van Manen and Mr. Charlton need
not have known the full extent of the conspiracy or all of its
activities or all of its participants.  It is not even
necessary that Mr. Van Manen and Mr. Charlton knew every other
member of the conspiracy or indeed that they knew each other.
In fact, a defendant may know only one other member of the
conspiracy and still be a coconspirator.  Nor is it necessary
that a defendant receive any monetary benefit from
participating in the conspiracy or have a financial stake in
the outcome, so long as he in fact participated in the
conspiracy in the manner I have explained.

A defendant also need not have joined the conspiracy
at the outset.  He may have joined it at any time in its
progress, and he will still be held responsible for all that
was done before he joined and all that was done during the
conspiracy's existence while he was a member.  Each member of a

j5g2van1

conspiracy may perform separate and distinct acts.  Some

conspirators play a major roles while others play minor roles.

An equal role is not what the law requires.  Even a single act

may be sufficient to draw a defendant within the scope of the

conspiracy.

          I want to caution you, however, that a person's mere

association with a member of a conspiracy does not make that

person a member of the conspiracy, even when the association is

coupled with knowledge that a conspiracy exists.  Mere presence

at the scene of a crime, even coupled with knowledge that a

crime is taking place, is not sufficient to support a

conviction.  In other words, knowledge without agreement and

participation is not sufficient.  What is necessary is that the

defendant you are considering participated in the conspiracy

with knowledge of its unlawful purpose, and with an intent to

aid in the accomplishment of its unlawful objective or

objectives.

          Thus it is not required that the government show that

the coconspirators also knew that they were violating some

particular federal statute.  But the government must show that

the coconspirators acted with the intent to help carry out some

essential step in the execution of the agreement to violate the

federal law that, in the case of Count One of the indictment,

alleges a violation of the narcotics laws, e.g., for example,

the unlawful distribution or the unlawful possession with the

j5g2van1

intent to distribute heroin and fentanyl.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members. So, too, once a person is found to be a member of a conspiracy, he is presumed to continue his membership in the venture until its termination, unless it is shown by some affirmative proof that he withdrew and disassociated himself from it.

Now, in instructing you this far with respect to conspiracy, I have talked to you about the concept of knowledge. I need to say one more thing about that concept, and that deals with conscious avoidance.

In determining whether the defendant you are considering acted with the necessary knowledge, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been clear. As I have said, knowledge cannot be established by showing that a defendant was careless or negligent. On the other hand, one may not willfully or intentionally remain ignorant of a fact that is material and important to one's conduct in order to escape the consequences of the criminal law.

I want to be clear that this concept only applies when determining whether a defendant knew the objects or purposes of the conspiracy; it does not apply when determining whether a defendant knowingly participated in the conspiracy. It is

j5g2van1

logically impossible for a defendant to join a conspiracy
unless he knows that a conspiracy exists.  Thus, for example,
if you find that either Mr. Van Manen, Mr. Charlton, or both,
were aware of a high probability that the conspiracy at issue
in Count One was to distribute narcotics, and either or both of
them consciously avoided confirming that fact, you may infer
that they implicitly had knowledge.  If, however, Mr. Van Manen
or Mr. Charlton actually believed that the conspiracy was not
to distribute narcotics, or if they were merely negligent or
careless with regard to what knowledge they had, they lacked
the knowledge necessary to become a coconspirator.

A word or two about economic necessity.  When
deliberating whether either Mr. Van Manen, Mr. Charlton, or
both, unlawfully, knowingly, and willfully entered into the
conspiracy charged in Count One of the indictment, I instruct
you that a defendant's economic status has no bearing on
whether the government proved that the defendant being
considered unlawfully, knowingly, and willfully entered into
the conspiracy.  That is because economic necessity is not a
defense to the crime charged in Count One.

A word or two about multiple conspiracies.  The
indictment charges that Mr. Van Manen and Mr. Charlton and the
other alleged coconspirators were all members of one single
conspiracy to possess with the intent to distribute heroin and
fentanyl.  Whether a single conspiracy or multiple conspiracies

j5g2van1

1    exist is a question of fact that you must decide.

2            When two or more people join together to further one

3    common unlawful purpose -- one unlawful design or purpose, a

4    single conspiracy exists.  By way of contrast, multiple

5    conspiracies exist when there are separate unlawful agreements

6    to achieve distinct purposes.  Proof of several separate and

7    independent conspiracies is not proof of the single overall

8    conspiracy charged in the indictment, unless one of the

9    conspiracies proved happens to be the single conspiracy

10   described in the indictment.

11           You may find that there was a single conspiracy

12   despite the fact that there were changes in either personnel or

13   activities or both, so long as you find that some of the

14   coconspirators continued to act for the entire duration of the

15   conspiracy for the purpose charged in the indictment.  The fact

16   that the members of a conspiracy are not always identical does

17   not necessarily imply that separate conspiracies exist.

18           On the other hand, if you find that the conspiracy

19   charged in the indictment did not exist, you cannot find any

20   defendant guilty of the single conspiracy charged in the

21   indictment.

22           (Continued on next page)

23

24

25

1     THE COURT:  This is so even if you find that some

2     conspiracy other than the one charged in the indictment

3     existed, even though the purpose of both conspiracies may have

4     been the same and even though there may have been some overlap

5     in membership.  Similarly, if you find that a particular

6     defendant was a member of another conspiracy, and not the one

7     charged in the indictment, then you must acquit that defendant

8     of the conspiracy charge.

9          Therefore, what you must do is determine whether the

10    conspiracy charged in the indictment existed.  If it did, you

11    then must determine the nature of the conspiracy and who were

12    its members.

13         You have heard about buyer-seller.  A buyer-seller

14    relationship between a defendant and another person, standing

15    alone, cannot support a conviction for conspiracy.  The fact

16    that a defendant may have bought heroin from another person or

17    sold heroin to another person is not sufficient without more to

18    establish that the defendant was a member of the charged

19    conspiracy.  Instead, a conviction for conspiracy requires

20    proof of an agreement to commit a crime beyond that of the mere

21    sale.

22         In considering whether the evidence supports the

23    existence of a conspiracy or the existence of a buyer-seller

24    relationship, you may consider:  (1) whether the sales were

25    made on credit or consignment; (2) the frequency of the sales;

J5G8VAN2                         Charge

(3) the quantity of sales; (4) whether the parties advised each

other on the conduct of the other's business; (5) whether the

buyer purchased heroin from other sellers not involved in the

charged conspiracy; (6) the delve of trust demonstrated between

the buyer and seller, including the use of codes; (7) whether

the parties advised each other on the conduct of the other's

business; (8) whether the buyer assisted the seller by looking

for other customers; (9) whether the parties agreed to warn

each other of potential threats from competitors or law

enforcement; and (10) whether there were any limitations on the

buyer's ability to use or resell the heroin they purchased.

          The presence or absence of any single factor is not

determinative, and you should use your own sense and judgment

in light of all of the evidence that has been presented to you.

          Now, if, and only if, you conclude that the government

has met its burden of establishing the guilt of the defendant

you are considering beyond a reasonable doubt with respect to

the conspiracy charged in Count One of the indictment, you will

then be required to determine the quantity of heroin involved.

You do not need to make a determination with respect to

quantity of fentanyl.

          As to each defendant you do not need to determine the

precise quantity of heroin involved in the offense.

          Instead, as to Mr. Van Manen, with regard to heroin,

you must determine whether the government has proven beyond a

J5G8VAN2                          Charge

reasonable doubt that Mr. Van Manen was either (1) personally

involved with the distribution of one kilogram or more or

between 100 grams to one kilogram or less than 100 grams of

mixtures or substances containing a detectable amount of

heroin; or (2) whether it was reasonably foreseeable to Mr. Van

Manen that the conspiracy involved one kilogram or more or

between 100 grams to one kilogram or less than 100 grams of

mixtures or substances containing a detectable amount of heroin

and that the distribution of such foreseeable quantity of

heroin was what he agreed to do with others.

         As to Mr. Charlton, with regard to heroin, you must

determine whether the government has proven beyond a reasonable

doubt that Mr. Charlton was either personally involved with the

distribution of 100 grams or more of mixtures or substances

containing a detectable amount of heroin, or less than 100

grams of mixtures or substances containing a detectable amount

of heroin; or whether it was reasonably foreseeable to Mr.

Charlton that the conspiracy involved 100 grams or more of

mixtures or substances containing a detectable amount of heroin

or less than 100 grams of mixtures or substances containing a

detectable amount of heroin and that the distribution of such

foreseeable quantity of heroin was what he agreed to do with

others.

         You will be provided with a verdict sheet or form that

will include a space for you to indicate your determination

J5G8VAN2                        Charge

1    with respect to the quantity of heroin.

2              Your finding on the quantity must be unanimous in the

3    sense that all of you must agree that the conspiracy involved

4    at least the quantity you indicate on the verdict sheet.  Thus,

5    for example, if all of you agree that the conspiracy involved

6    one kilogram or more of mixtures and substances containing a

7    detectable amount of heroin, you should indicate one kilogram

8    or more of heroin.  If, for example, some jurors conclude that

9    the conspiracy involved one kilogram or more of heroin and the

10   rest of the jurors conclude that it involved between 100 grams

11   and one kilogram of heroin, you should indicate 100 grams to

12   one kilogram of heroin on the verdict sheet, because all of you

13   would be in agreement that the conspiracy involved at least 100

14   grams of heroin.  If you conclude that the government has not

15   proved that the conspiracy involved between 100 grams to one

16   kilogram of heroin, then you may indicate less than 100 grams

17   of heroin on the verdict form.

18             In making your determination about the quantity of

19   heroin involved in the conspiracy charged in the indictment,

20   you should include whatever quantity of heroin was involved in

21   any act or acts in which the defendant you are considering

22   personally and directly participated.  That is, if you find

23   that the defendant personally and directly participated in a

24   jointly undertaken drug transaction, he is responsible for the

25   full quantity of heroin involved in that transaction, whether

J5G8VAN2                        Charge

or not he knew the specific quantity of drug involved in the

transaction.

        In making your determination about the quantity of

heroin involved in the offense, you should also include any

heroin associated with any co-conspirators of the defendant you

are considering, as long as the quantity was either known to

the defendant or reasonably foreseeable to him, and within the

scope of the criminal activity that he jointly undertook.

        Now, a word about death resulting in serious bodily

injury from a controlled substance.

        Count One of the indictment also charges, with respect

to Mr. Van Manen only, that the use of drugs distributed

through the conspiracy resulted in the serious bodily injury of

Shaun Sullivan on or about October 5, 2017, and the death of

Michael Ogno on or about December 1, 2017.  Thus, only if you

find Mr. Van Manen guilty of Count One, will you then be asked

to make two separate findings.

        First, you will be asked to find whether the

government has proved beyond a reasonable doubt that Shaun

Sullivan's use of heroin and/or fentanyl distributed through

the conspiracy resulted in serious bodily injury to Mr.

Sullivan, and second, you will be asked to find whether Michael

Ogno's use of heroin and/or fentanyl distributed through the

conspiracy resulted in his death or serious bodily injury.

With respect to both the serious bodily injury and the death,

J5G8VAN2                         Charge

1    you must also decide whether either Mr. Van Manen or a

2    co-conspirator for whose conduct Mr. Van Manen would be

3    accountable actually distributed drugs to Sullivan and Ogno.

4    Your findings must be unanimous.

5            As with the types of drugs involved, the government

6    need not prove that the heroin and/or fentanyl distributed

7    through the conspiracy resulted in both the serious bodily

8    injury of Shaun Sullivan and the death or serious bodily injury

9    of Michael Ogno.  Instead, you should consider each question

10   separately -- that is, whether the heroin and/or fentanyl

11   distributed through the conspiracy resulted in the serious

12   bodily injury of Shaun Sullivan, and separately, whether the

13   heroin and/or fentanyl distributed through the conspiracy

14   resulted in the death or serious bodily injury of Michael Ogno.

15   On each of these questions, you may only enter that special

16   finding if you are unanimous, that is, if all of you are in

17   agreement with respect to whether either the serious bodily

18   injury or the death was caused by heroin and/or fentanyl

19   distributed through the conspiracy.

20           I instruct you that in order to find the serious

21   injury or death of a particular individual resulted from the

22   use of heroin and/or fentanyl distributed through the

23   conspiracy, you must find that the government has proven that

24   heroin and/or fentanyl distributed by Mr. Van Manen or a

25   co-conspirator was the cause of the alleged victim's serious

1   bodily injury or death.  In other words, the government must

2   prove that the alleged victim would not have suffered a serious

3   bodily injury or died on the date he did, but for the ingestion

4   of the heroin and/or fentanyl distributed by Mr. Van Manen or

5   one of his co-conspirators.

6          To be clear, the government is not required to show

7   that the heroin and/or fentanyl distributed through the

8   conspiracy was the only factor that brought about the alleged

9   victim's serious bodily injury or death.  Indeed, it can be

10  sufficient if the heroin and/or fentanyl distributed through

11  the conspiracy caused the alleged victim's serious bodily

12  injury or death in combination with other causes, so long as

13  you find that the government has proven that the individual in

14  question would not have suffered a serious bodily injury or

15  died on the date he did, absent his ingestion of the heroin

16  and/or fentanyl distributed through the conspiracy.  Put

17  another way, you must decide whether the incremental effect of

18  the heroin and/or fentanyl was the straw that broke the camel's

19  back in causing the serious bodily injury or death of the

20  victim or victims.

21         You must also consider whether the victim you are

22  considering in fact suffered a serious bodily injury or death.

23         With respect to the allegation that Shaun Sullivan

24  suffered a serious bodily injury, that means you must consider

25  whether the government proved beyond a reasonable doubt that

J5G8VAN2                      Charge

1   the heroin and/or fentanyl distributed by the conspiracy placed

2   Shaun Sullivan at a substantial risk of death, caused him

3   protracted and obvious disfigurement, or caused protracted loss

4   or impairment of the function of a bodily member, organ, or

5   mental faculty.

6           With respect to the allegation that Michael Ogno died,

7   that means you must consider whether the government proved

8   beyond a reasonable doubt that Ogno in fact died on or about

9   the date alleged in the indictment.

10          Only if you find that the victim would not have

11  suffered a serious bodily injury or died, but for his ingestion

12  of heroin and/or fentanyl supplied as part of the conspiracy

13  charged in Count One, must you then consider whether Mr. Van

14  Manen is responsible for that serious bodily injury or death.

15          Mr. Van Manen is responsible for the victim's serious

16  bodily injury or death only if either one of two conditions has

17  been proven:  First, if Mr. Van Manen personally and directly

18  participated in the transaction that resulted in the victim's

19  serious injury or death; or, second, the distribution of the

20  heroin and/or fentanyl that caused the victim's serious bodily

21  injury or death was either known to Mr. Van Manen or was

22  reasonably foreseeable to him, and was within the scope of the

23  criminal activity that he jointly undertook.  If you find

24  either of those to be true, this requirement is met.

25          In addition to all of the elements that I have

described to you, you must decide whether there is venue in
this judicial district -- that is, the Southern District of New
York.  For the crime of conspiracy to distribute controlled
substances, the government must establish that some act in
furtherance of the conspiracy was committed in the Southern
District of New York.

     This means that you must decide whether the unlawful
agreement, or any act committed to further or promote the
conspiracy, occurred within the Southern District of New York.
Such acts include the distribution of controlled substances or
the transportation of controlled substances to their final
point of sale.  In this regard, the government need not prove
that the crime itself was committed in this district or that
the defendant you are considering himself was present here.  It
does not matter whether the act was committed by a defendant or
an alleged co-conspirator.

     The Southern District of New York includes Manhattan,
the Bronx, Westchester, Dutchess, Putnam, Orange, Sullivan, and
Rockland counties, the waterways surrounding those counties,
including the East River, the Hudson River, and Kill Van Kull,
and all of the bridges that traverse those waterways, including
the Verrazzano-Narrows Bridge, which traverses the narrows, the
body of water separating Staten Island and Brooklyn, the
Bayonne Bridge, which traverses the Kill Van Kull, the body of
water separating Staten Island and Bayonne, New Jersey, and the

J5G8VAN2                         Charge

1    Goethals Bridge, which traverses the Arthur Kill straight, the

2    body of water separating Staten Island and New Jersey, and the

3    Outerbridge Crossing, which traverses the Arthur kill straight,

4    the body of water separating Staten Island and New Jersey.

5            I further instruct you that with respect to the

6    charges against Mr. Van Manen, that the use of heroin and/or

7    fentanyl distributed through the conspiracy resulted in the

8    serious bodily injury of Shaun Sullivan on or about October 5,

9    2017, and the death of Michael Ogno on or about December 1,

10   2017, the government need not show that the serious bodily

11   injury or death, or that the drugs those victims were allegedly

12   provided that caused the serious bodily injury or death,

13   occurred in the Southern District of New York.  Rather, venue

14   as to those charges is satisfied if you find that any act in

15   furtherance of the conspiracy charged in Count One occurred in

16   the Southern District of New York.

17           I should note that on this issue -- and this issue

18   alone -- the government need not prove venue beyond a

19   reasonable doubt, but only by the lesser standard of a

20   preponderance of the evidence.  Thus, the government has

21   satisfied its burden on this issue if you conclude that it is

22   more likely than not that venue exists.  But I remind you that

23   the government must prove all other elements of the offenses

24   beyond a reasonable doubt.

25           That concludes my instructions on the substantive law.

J5G8VAN2                          Charge

1           Now, my concluding instructions.

2           You are about to go into the jury room and begin your

3    deliberations.  Your function now is to weigh the evidence in

4    this case and to determine whether the government has proved

5    beyond a reasonable doubt that Mr. Van Manen, Mr. Charlton, or

6    both, are guilty of the offenses charged in the indictment.

7    Remember, you must answer as to each defendant separately.

8           You must base your verdict solely on the evidence and

9    these instructions as to the law, and you are obliged under

10   your oath as jurors to follow the law as I have instructed you,

11   whether you agree or disagree with the particular law in

12   question.

13          The verdict must represent the considered judgment of

14   each juror.  In order to return a verdict, it is necessary that

15   each juror agree to it.  Your verdict must be unanimous.  If

16   you are divided, do not report how the vote stands, and if you

17   have reached a verdict, do not report what it is until you are

18   asked in open court.

19          When you retire to the jury room, you must have a

20   foreperson.  That person will preside over the deliberations

21   and speak for you here in open court.  Other than those

22   functions, the foreperson will have no greater or lesser

23   authority than any other juror.

24          It is my custom to select Juror No. 1 in every case to

25   be the foreperson of the jury.  Accordingly, I am now selecting

J5G8VAN2                    Charge

1    Juror No. 1, Ms. Bader, to be your foreperson.

2            It is your duty as jurors to consult with one another

3    and to deliberate with a view towards reaching an agreement.

4    Each of you must decide the case for herself, but do so only

5    after an impartial discussion and consideration of all the

6    evidence in the case with your fellow jurors.  In the course of

7    your deliberations, do not hesitate to re-examine your own

8    views and change an opinion if you become convinced it is

9    erroneous.  But do not surrender your honest convictions as to

10   the weight or effect of evidence solely because of the opinions

11   of your fellow jurors.

12           Because it is essential that every juror consider all

13   the facts and arguments before reaching a decision, all of you

14   must be present in order to deliberate.  If any juror takes a

15   break during the course of your deliberations, you have to stop

16   discussing the case until she returns.  Similarly, if any juror

17   arrives late in the morning, you may not commence your

18   deliberations until all 12 of you are present.

19           For your deliberations, you will be provided with

20   copies of these instructions, as I told you, and I will give

21   you copies of the indictment.  You will also be provided with

22   one verdict sheet on which you will record your verdict.

23           I am going to send the exhibits received in evidence

24   into the jury room.  If you want any of the testimony read, you

25   may also request that.  Please remember that it is not always

J5G8VAN2                         Charge

1    easy to locate what you might want, so be as specific as you

2    possibly can in requesting testimony or portions of testimony.

3    If you want further explanation of the law as I have explained

4    it to you, you may also request that from the Court.  If there

5    is any doubt or question about the meaning of any part of this

6    charge, you may ask for clarification or further explanation.

7            Your requests -- or any other communication you wish

8    to make with the Court -- should be made to me in writing,

9    signed by your foreperson, and given to one of the court

10   security officers.  Bear in mind that you are never to reveal

11   to any person -- not even to me -- how you, the jury, stand

12   numerically or otherwise, on the questions before you, until

13   after you have reached a unanimous verdict.

14           Your decision has to be unanimous, but you are not

15   bound to surrender your honest beliefs concerning the effect or

16   weight of the evidence for the mere purpose of returning a

17   verdict or solely because of the opinion of other jurors.

18   Discuss and weigh your respective opinions dispassionately,

19   without regard for sympathy, prejudice or favor for either

20   party, and adopt that conclusion that in your good conscience

21   appears to be in accordance with the truth.

22           Some of you have taken notes during the trial.  As I

23   told you at the beginning of the trial, this is permitted

24   because some people find that taking notes helps them focus on

25   the testimony.  Your notes are for your private use only, as a

J5G8VAN2                    Charge

1  way to help you recall the testimony as you begin your

2  deliberations.  A juror's notes are entitled to no greater

3  weight than the recollections of a juror who does not take

4  notes.

5           Your function now is to weigh the evidence in this

6  case and to determine whether the government has or has not

7  established Mr. Van Manen, Mr. Charlton, or both defendants'

8  guilt beyond a reasonable doubt with respect to Count One of

9  the indictment.  You must base your verdict solely on the

10 evidence and these instructions as to the law.  You are obliged

11 by your oath as jurors to follow the law as I instruct you,

12 regardless of whether you agree or disagree with the particular

13 law in question.  Remember at all times you are not partisans.

14 You are judges -- judges of the facts.  Your sole interest is

15 to seek the truth from the evidence in this case.

16          Now, as to the alternate juror, Mr. Jackson, only 12

17 can deliberate.  So I am going to excuse Mr. Jackson now.  You

18 will notice I said "excuse" and not "dismiss."  There may be

19 circumstances where you will have to be recalled such as one of

20 the 12 jurors unexpectedly becomes unavailable.

21          In addition to thanking you for your punctuality, your

22 faithful attendance, and the close attention you paid, I am

23 going to instruct you, Mr. Jackson, not to discuss the case

24 with anyone; not to read, listen to, or watch any news reports;

25 and not to do any research until this case is over.

J5G8VAN2                    Charge

1        We have your contact information, Mr. Jackson, and we

2   will contact you should the need arise.  If no need arises, we

3   will contact you when the jury of 12 concludes its

4   deliberations.

5        If you took notes, Mr. Jackson, please leave them

6   behind.  Please do not take any notebook or the transcripts.

7        You are excused now.

8        (Alternate juror excused)

9        THE COURT:  I will hear counsel at the sidebar.

10        (At the sidebar)

11        THE COURT:  Any objections other than the ones you

12   already have made?

13        MR. QUIJANO:  No, your Honor.

14        MS. O'NEILL:  No, your Honor.

15        MR. FINKEL:  No, your Honor.

16        THE COURT:  Thank you.

17        MR. FINKEL:  Would you allow the jury to deliberate

18   the full day on Friday if they would like?

19        THE COURT:  I am going to tell them now, while we are

20   waiting for the marshal to come up so he can be sworn in, that

21   it's up to them to deliberate.  I think we have been told by

22   David that some of the jurors have 4:30 appointments and want

23   to leave at 4:30 today.  So I don't know about tomorrow.

24        MR. FINKEL:  Very well.

25        THE COURT:  I will tell them to let us know.

J5G8VAN2

1          (In open court)

2          THE COURT:  Swear in the marshal.

3          (Marshal sworn)

4          THE COURT:  Now, before you retire to begin your

5    deliberations, your schedule for deliberations is strictly up

6    to you.  You can stay as long as you want.  You can stay as

7    short as you want.  We have to wait for you to reach a

8    conclusion.  It might be helpful if at the end of the day,

9    Madam Foreperson, you let us know what your schedule is going

10   to be today, and tomorrow, if you have to go into tomorrow.

11          All right, marshal.

12          (Jury retires to deliberate; time noted:  10:25 a.m.)

13          THE COURT:  Can we have the exhibits?

14          MR. QUIJANO:  Yes, your Honor.

15          THE COURT:  Did you get yours?  You found them or you

16   have duplicates?

17          MR. QUIJANO:  They are duplicates.

18          MR. FINKEL:  The government has our exhibits as well.

19   We will confer with defense counsel to see if there are any

20   issue with them.

21          So the Court is aware, the government has prepared a

22   clean laptop that contains just the recordings that were

23   admitted into evidence and certain cell files -- there are no

24   other documents on it -- just to allow the jury to listen to

25   whatever calls and review electronic evidence.

J5G8VAN2

1          THE COURT:  You're not sending that into the jury

2     room, are you?

3          MR. FINKEL:  We were planning to, if your Honor would

4     like us to.

5          THE COURT:  Let's have them ask first.  Don't send it

6     in.

7          MR. QUIJANO:  Actually, two are originals, two are

8     duplicates, for my exhibits.

9          MS. O'NEILL:  The Court has our exhibits, our

10    originals already, I believe.

11         THE COURT:  You're wrong about that, Ms. O'Neill.  I

12    don't have any exhibits.

13         MR. SANTIAGO:  Your Honor, I gave them to David a day

14    or two ago.

15         THE COURT:  Mr. Santiago, wait till David comes back.

16         MS. FENDER:  We also have requested that both defense

17    counsel send us copies of their exhibits.  We don't have Mr.

18    Van Manen's, but we do, I believe, have some version of Ms.

19    O'Neill and Mr. Santiago's.  So worst-case scenario, we have

20    those electronically.  We can go print copies downstairs, your

21    Honor, if we have just a few minutes.

22         THE COURT:  I stand corrected, Mr. Santiago.

23         MS. O'NEILL:  We are very relieved.

24         THE COURT:  Mr. Santiago, I have C, D, and E.

25         MR. SANTIAGO:  C, D, and E were entered into evidence.

J5G8VAN2

1       THE COURT:  There is no A and B?

2       MR. SANTIAGO:  No.  They were just used for

3  identification.

4       THE COURT:  So that takes care of Mr. Charlton, C, D,

5  and E.

6       MS. O'NEILL:  Yes, your Honor.

7       THE COURT:  When David comes back, you should leave

8  your cell phone numbers and we will call you.  But I would hang

9  around for a while.

10       MR. FINKEL:  Thank you, your Honor.

11       MS. O'NEILL:  Thank you, your Honor.

12       (Recess pending verdict)

13       THE COURT:  We have another note from the jury, and I

14  will give it to you.

15       "We would like a copy of Bryan Dunn, Jessica Fyfe,

16  Dimitri Devito, and Brittany Christie's testimony."

17       Mark this as Court Exhibit 3.  I am going to give it

18  to the government and the defendants.

19       MS. FENDER:  For the record, just to clarify, Court

20  Exhibit 1 and 2 are what?

21       Court Exhibit 2, I assume, is this note.

22       THE COURT:  Yes.

23       MS. FENDER:  What was Court Exhibit 1?

24       THE COURT:  I don't know.  We will have to wait until

25  David comes back.

J5G8VAN2

1           David, what is Court Exhibit 1?

2           THE DEPUTY CLERK:  The one where they asked for the

3   jury charge.

4           THE COURT:  Court Exhibit 1 was the note where they

5   requested four more copies of the jury charge because some

6   pages were missing.  We didn't convene for that.  We just gave

7   out the four additional charges.

8           MS. FENDER:  Your Honor, just to make effective use of

9   time.  So the government had taken the liberty of preparing

10  redacted versions of the transcripts in advance so that we

11  could move efficiently.  We had provided those to defense

12  counsel, and I think they have had an opportunity to review

13  that.  We will see if there are any issues.  In general, how do

14  you like to provide transcripts back to the jury?  We have

15  already redacted just one copy.  I don't know what your Honor's

16  practice is.

17          THE COURT:  My practice is not to give them the

18  transcript but to ask them what they want read back.  I am open

19  to other alternatives.

20          MS. FENDER:  We are happy to proceed however your

21  Honor wants to proceed.  We have the prepared redacted

22  transcripts if you decide it's appropriate to send them back.

23          (Defendants present)

24          THE COURT:  Court Exhibit 2.  They need clarification

25  on page 47 of the jury charge.  Everybody has copies of that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J5G8VAN2

1    I will take suggestions from the government and from

2    the defendants.  How do you suggest we respond?

3    MR. FINKEL:  We have a proposed answer to that

4    question.  We would ask that the Court instruct the jury the

5    following:

6    The instructions on pages 46 and 47 were different

7    ways to explain but-for causation.  The issue for you, the

8    jury, is to determine whether the government proved beyond a

9    reasonable doubt that the victim would not have suffered a

10   serious bodily injury or death but for the fentanyl and/or the

11   heroin distributed by the conspiracy.  However, the government

12   need not show that heroin and/or fentanyl was the only factor

13   that brought about the injury or death.  For example, in this

14   trial, you may have heard evidence that there was Xanax,

15   fentanyl and heroin in Michael Ogno's body at the time of his

16   death.  The question for you to determine is whether, but for

17   the fentanyl and/or heroin, if it were distributed by the

18   conspiracy, he would not have died but for the fentanyl and/or

19   heroin in his system.

20   THE COURT:  Mr. Quijano.

21   MR. QUIJANO:  May I have one moment, please, your

22   Honor.

23   MS. SIDERIS:  Your Honor, the proposed language by the

24   government we would object to.  If a clarification is given, we

25   would certainly object to everything the government said after

J5G8VAN2

"however," and just clarify that the instructions on page 46

and 47 are ways to explain but-for causation.  The issue for

you, the jury, is to determine whether the government proved

beyond a reasonable doubt that the victim would not have

suffered a serious bodily injury or death but for the fentanyl

and/or the heroin distributed by the conspiracy, period.

          MR. FINKEL:  The government doesn't think that

adequately answers the jury's question.  Certainly here, with

respect to Mr. Ogno, there were multiple substances in his

blood, and clearly the jury is trying to determine, it would

seem, how to assemble all this evidence and what the law

directs them to do.  And the law on that issue is clear.

Fentanyl and heroin does not need to be the only thing that

contributed to the death of Mr. Ogno.  The question that they

have to consider is whether the fentanyl and heroin -- but for

the fentanyl and heroin, whether he would have died.

          So we think it's certainly appropriate -- it's

consistent with your Honor's instructions that were delivered

this morning, consistent with the Supreme Court case that the

government cited in its letter -- to explain that heroin and

fentanyl need not be the only thing that caused the death.  And

we think the example that I articulated before is appropriate

here so the jury understands the context in which this

instruction is given.

          MS. SIDERIS:  We believe it is sufficient for the

J5G8VAN2

1        Court to say that the instructions were ways to explain, and

2        then state the law.  Everything after "however" is not the law

3        and --

4                 THE COURT:  Tell me what is after "however."

5                 MR. FINKEL:  I believe it is the law.  However, the

6        government need not show that heroin and/or fentanyl was the

7        only factor that brought about the injury or death.  That is

8        adopted from your Honor's instructions this morning.

9                 THE COURT:  Give me your language again.

10                MR. FINKEL:  The instructions on page 46 and 47 were

11       different ways to explain but-for causation.

12                THE COURT:  Different ways to explain but-for

13       causation.  Yes.

14                MR. FINKEL:  The issue for you to determine, as

15       explained on pages 46 and 47, is whether the government proved

16       beyond a reasonable doubt that the victim would not have

17       suffered a serious bodily injury or death but for the

18       fentanyl --

19                THE COURT:  Would not have suffered a serious bodily

20       injury or death.

21                MR. FINKEL:  But for the fentanyl or heroin

22       distributed by the conspiracy.

23                THE COURT:  Ms. Sideris, that language that Mr. Finkel

24       just gave is acceptable to you?

25                MS. SIDERIS:  Yes, your Honor, right now.

J5G8VAN2

1          THE COURT:  Up to the "however" clause.

2          MS. SIDERIS:  I believe that's all that is necessary

3     to provide clarification up to this point.

4          THE COURT:  And give me the "however" clause again,

5     Mr. Finkel.

6          MR. FINKEL:  Certainly.  It's adopted from the

7     instructions that you gave this morning on page 47.  And it

8     says, However, the government need not show that heroin and/or

9     fentanyl was the only factor that brought about the injury or

10    death.

11         That's, as I mentioned, adopted from the top of page

12    47.

13         THE COURT:  Give it to me again.

14         MR. FINKEL:  However, the government need not show

15    that heroin and/or fentanyl was the only factor that brought

16    about the injury or death.

17         THE COURT:  OK.

18         MR. FINKEL:  Then we would also, as I read before,

19    offer:  For example, in this trial, you may have heard evidence

20    that there was Xanax, fentanyl and heroin in Michael Ogno's

21    body at the time of his death.

22         THE COURT:  I am not going to do that.  I haven't been

23    commenting on the evidence all the way through.

24         MR. FINKEL:  Understood.

25         MS. SIDERIS:  Your Honor, my objection is the same.  I

J5G8VAN2

believe that the instructions on page 46 and 47, the first

sentence of the proposed -- the first clause of the first

sentence of the proposed language covers the instructions on

page 46 and 47, including the sentence starting with "however."

MR. FINKEL:  Your Honor, respectfully, I think that's

an incomplete recitation of the law that the jury is required

to consider.  And just reading from your instructions this

morning on page 47, this is from your Honor's instructions:

"To be clear, the government is not required to show that the

heroin and/or fentanyl distributed through the conspiracy was

the only factor that brought about the alleged victim's serious

bodily injury or death.  Indeed, it can be sufficient if heroin

and/or fentanyl distributed through the conspiracy caused the

alleged victim serious bodily injury or death in combination

with other causes."  And it goes on.

THE COURT:  I already told them that.  Why should I

tell them again?

MR. FINKEL:  I think the reason why is because they

seem to be confused about it.  And if we were to tell them just

a piece of it, respectfully, your Honor, I don't think it

establishes --

THE COURT:  "In combination with" is different from

"the straw that broke the camel's back."  I think the straw

that broke the camel's back is an elaboration of combination.

So we are just clarifying that.

J5G8VAN2

1          MR. FINKEL:  I think to clarify that, it's important

2     that they understand what is the law as you read to them, which

3     is that heroin and fentanyl need not be the only things that

4     caused the death or injury.  I think that's particularly

5     important in this case, and given the language in the jury's

6     note, that seems to be what the tension is.  And to provide

7     them the full explanation I think is necessary.

8          MS. SIDERIS:  Again, your Honor --

9          THE COURT:  I understand.

10          Now, what about the second note, the transcripts of

11     Bryan Dunn, Jessica Fyfe, Mr. Devito, and Ms. Christie?

12          MR. FINKEL:  The government is prepared to proceed

13     however the Court would like.  We have the transcripts printed.

14     We can provide them to the jury.  If the Court would prefer a

15     readback, that's fine with the government.

16          THE COURT:  Mr. Quijano, Ms. Sideris, Ms. O'Neill.

17          MS. SIDERIS:  I think I speak for the entire defense

18     that they should be provided with the transcripts, if that's

19     what they request.

20          THE COURT:  The government object?

21          MR. FINKEL:  No.

22          THE COURT:  All right.

23          The instructions at 46 and 47 were different ways to

24     explain but-for causation.  Is that correct so far?

25          MS. SIDERIS:  Yes, your Honor.

J5G8VAN2

1          MR. FINKEL:  Yes your Honor.

2          THE COURT:  The issue for you to decide is whether,

3   whether what?

4          MR. FINKEL:  Whether the government has proven beyond

5   a reasonable doubt --

6          THE COURT:  Whether the government has proved beyond a

7   reasonable doubt that.

8          MR. FINKEL:  -- that the alleged victim would not have

9   suffered --

10         THE COURT:  Would not have suffered serious bodily

11  injury or death but for?

12         MR. FINKEL:  But for the ingestion of heroin and/or

13  fentanyl distributed through the conspiracy.

14         THE COURT:  However what?

15         MR. FINKEL:  However, the government need not show

16  that the heroin and/or fentanyl distributed through the

17  conspiracy was the only factor that brought about the victim's

18  serious bodily injury or death.

19         THE COURT:  Heroin or fentanyl is what?

20         MR. FINKEL:  The heroin or fentanyl distributed

21  through the conspiracy was not the only factor that -- let me

22  repeat it again.

23         However, the government need not show that the heroin

24  and/or fentanyl distributed through the conspiracy was the only

25  factor that brought about the victim's serious bodily injury or

J5G8VAN2

1     death.

2               THE COURT:  All right.

3               MR. FINKEL:  Thank you.

4               THE COURT:  Call the jury out.

5               MS. FENDER:  If you are inclined to send the

6     transcripts back, just so we can prepare those, how many copies

7     would you like for us to prepare?  We will make them as quickly

8     as possible.

9               THE COURT:  Make one copy available.

10              MS. FENDER:  One copy?

11              THE COURT:  Yes.

12              MS. FENDER:  Thank you, your Honor.

13              (Jury present; time noted:  1:20 p.m.)

14              THE COURT:  Please be seated.

15              We have two notes from you.

16              The second note reads:  We would like a copy of Bryan

17    Dunn, Jessica Fyfe, Dimitri Devito, and Brittany Christie's

18    testimony.

19              We are going to make a copy of the transcript and make

20    the testimony of Mr. Dunn, Ms. Fyfe, Mr. Devito, and Ms.

21    Christie available to you.

22              The first note that we got is:  We need clarification

23    on page 47 of the jury charge, first full paragraph:  "Indeed,

24    it can be sufficient... caused the alleged victim's bodily

25    injury or death in combination with other causes"... versus

J5G8VAN2

"you must decide whether the incremental effect was the straw
that broke the camel's back in causing ..." and so forth.

Then the question is:  In combination with is
different from the straw that broke the camel's back.

The instructions on page 46 and 47 were different ways
to explain but-for causation.  The issue for you to determine,
as explained on pages 46 and 47, was whether the government has
proved beyond a reasonable doubt that the alleged victim would
not have suffered a serious bodily injury or death but for the
ingestion of heroin and/or fentanyl distributed through the
conspiracy.  However, the government need not show that the
heroin and/or fentanyl distributed through the conspiracy was
the sole factor that brought about the victim's serious bodily
injury or death.

That's the answer to your question and the transcripts
will be sent in through the marshal.

You can resume your deliberations.  Thank you.

(Jury resumes deliberations; time noted:  1:24 p.m.)

(Recess pending verdict)

THE COURT:  We have got another note from the jury,
which I have copied and given to counsel for the defendants and
for the defendant.

"We have decided unanimously on all of the counts with
the exception of Michael Ogno's death.  We are very divided and
cannot reach consensus.  How should we proceed?"

J5G8VAN2

1          First of all, I instructed this morning that they

2    should never reveal to any person -- not even to me -- how you,

3    the jury, stand, numerically or otherwise, on the questions

4    before you, until after you have a reached a unanimous verdict.

5          They seem to have ignored that.  What should we do

6    about that?  And what should we do about the request how should

7    we proceed?

8          MR. FINKEL:  Your Honor, the government's view is the

9    jury has not even deliberated for a full day.  We would ask the

10   Court just to provide a gentle reminder to the jury that they

11   have all the time they need to consider the charges, to

12   consider the evidence in this case, and certainly have more

13   time than just the time that they have been deliberating.  We

14   think that's sufficient.

15         With respect to the fact that they have revealed their

16   vote on other charges, we would just ask that you tell them not

17   to do that again.  I think that will address the issue.

18         MR. QUIJANO:  We'd ask the Court to declare a

19   mistrial, and, in the alternative, to take a verdict and

20   declare a mistrial -- one moment, your Honor.

21         Your Honor, we would request that the Court grant a

22   mistrial as to the entire case since they did not follow the

23   instructions about revealing this information.  And, in the

24   alternative, to take the verdict and declare a mistrial as to

25   the Ogno enhancement.

J5G8VAN2

1          THE COURT:  Ms. O'Neill.

2          MS. O'NEILL:  We would also request a mistrial due to

3    the jury's failure to follow the Court's instructions.  They

4    seem to be deadlocked at least on one count and should have

5    waited until they had a unanimous decision as to all the

6    counts.

7          THE COURT:  Mr. Finkel.

8          MR. FINKEL:  Of course the government does not believe

9    there are any grounds, and I don't believe defense counsel has

10   cited any legal grounds why there would need to be a mistrial

11   over this note.  The jury is merely expressing that they are

12   considering one of the elements that they need to consider, and

13   that's what juries do.  So I don't think there is any basis at

14   all to declare a mistrial.

15         With respect to how we should proceed from here, your

16   Honor, again, they haven't been deliberating very long.  There

17   was a week and a half of testimony.  Some of the issues are

18   quite complicated involving expert testimony.  They should take

19   the time they need to work through the issues.

20         THE COURT:  Should I read them the language that

21   appears on page 52 and 53?  "To consult with one another and to

22   deliberate with a view towards reaching an agreement," the

23   first full paragraph, their duty to deliberate, on page 52.

24   And page 53, "Your decisions must be unanimous, but you are not

25   bound to surrender your honest beliefs concerning the effect or

J5G8VAN2

weight..."  Just direct them to those portions of the jury

charge?

          MR. FINKEL:  The government feels that is appropriate.

And the government also believes that it's appropriate for you

to tell the jury that they haven't been deliberating all that

long and they should take the time they need.  Thank you.

          THE COURT:  Mr. Quijano.

          MR. QUIJANO:  Your Honor, we believe the Court should

proceed in that manner, as far as page 52, reviewing that with

them.

          THE COURT:  Your application for a mistrial is denied.

          Please call in the jury.

          (Jury present; time noted:  3:46 p.m.)

          THE COURT:  We have your note.

          I want to direct your attention to page 53 of the jury

charge where I instructed you:  Bear in mind that you are never

to reveal to any person -- not even to me -- how you, the jury,

stand, numerically or otherwise, on the questions before you,

until after you have reached a unanimous verdict.  So I ask you

to comply with that.

          You have been deliberating since 10:30 this morning

till 3:30 in the afternoon.  That's five hours.  That may seem

like a long time, but it actually is a very brief time

considering the length and complexity of the trial.  So what I

would ask you to do is read page 52 of the instructions and

J5G8VAN2

1     page 53 of the instructions, and ask you to deliberate further

2     on this matter.

3              Thank you very much.

4              (Jury resumes deliberations; time noted:  3:47 p.m.)

5              THE COURT:  I am going to mark this most recent note

6     from the jury as Court Exhibit 4.

7              Everybody has copies?

8              MR. FINKEL:  Yes, your Honor.

9              THE COURT:  Thank you.

10             (Recess pending verdict)

11             (Jury present; time noted:  6:00 p.m.)

12             THE COURT:  You have reached a verdict.

13             FOREPERSON:  Yes.

14             THE DEPUTY CLERK:  Count One:  Narcotics conspiracy.

15             How do you find the defendant, Paul Van Manen, with

16    respect to Count One?

17             FOREPERSON:  Guilty.

18             THE DEPUTY CLERK:  If you find that the narcotics

19    conspiracy charged in Count One has been proved beyond a

20    reasonable doubt as to defendant Paul Van Manen, please

21    indicate:  (1) the quantity of the controlled substance (or

22    substances) Paul Van Manen conspired to distribute; (2) whether

23    the controlled substance (or substances) Paul Van Manen

24    conspired to distribute resulted in the death of Michael Ogno;

25    and (3) whether the controlled substance (or substances) Paul

J5G8VAN2

1   Van Manen conspired to distribute resulted in the serious

2   bodily injury of Shaun Sullivan, as set forth below:

3           If you found that Paul Van Manen conspired to

4   distribute heroin, please indicate the quantity of heroin

5   involved in the conspiracy by checking one of the following:

6           Heroin quantity.

7           FOREPERSON:  1 kilogram or more.

8           THE DEPUTY CLERK:  If you find that the conspiracy

9   involved fentanyl, please indicate here:

10          Fentanyl.

11          FOREPERSON:  Yes.

12          THE DEPUTY CLERK:  Death of Michael Ogno.

13          FOREPERSON:  Yes.

14          THE DEPUTY CLERK:  Serious bodily injury of Shaun

15  Sullivan.

16          FOREPERSON:  Yes.

17          THE DEPUTY CLERK:  How do you find the defendant,

18  Kenneth Charlton, with respect to Count One?

19          FOREPERSON:  Not guilty.

20          THE COURT:  Ladies, thank you very much for your very

21  conscientious hard work and service.  I never comment on a jury

22  verdict.  Your verdict is strictly your own.  And I am honored

23  that you did such hard, conscientious work.  I appreciate it

24  very much.  You have the thanks of the whole country.  Thank

25  you very much.

J5G8VAN2

1            You are discharged now.

2            Some of the lawyers may want to speak to you.  It's up

3    to you whether you want to speak to the lawyers.

4            (Jury excused)

5            THE COURT:  Please be seated.

6            We will prepare an order for Mr. Charlton in releasing

7    him from custody.  We will do that right now and deliver it to

8    the marshal.

9            MS. O'NEILL:  Your Honor, could you repeat what you

10   just said?  I don't think the marshals heard you.

11           THE COURT:  Do you want time for motions, Mr. Quijano?

12           MR. QUIJANO:  Yes, your Honor.  Could we have about

13   three weeks, please?

14           THE COURT:  How many weeks?

15           MR. QUIJANO:  Three.

16           THE COURT:  Sure.

17           June 10.

18           MR. QUIJANO:  Actually, can we go to the following

19   week?

20           THE COURT:  June 17.  That's four weeks.

21           MR. QUIJANO:  Thank you.

22           THE COURT:  I am going to sign an order dated May 16

23   directing that defendant, Kenneth Charlton, be released

24   immediately.

25           Anything else?

J5G8VAN2

1                Mr. Finkel.

2                MR. FINKEL:  Not from the government, your Honor.

3                THE COURT:  Mr. Quijano.

4                MR. QUIJANO:  I didn't hear the question.

5                THE COURT:  Do you have anything else?

6                MR. QUIJANO:  No, your Honor.

7                THE COURT:  Thank you very much.

8                (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25