UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
:
UNITED STATES OF AMERICA,                             :
:      18 Cr. 30 (PAC)
-against-                                             :
:      **OPINION & ORDER**
PAUL VAN MANEN,                                       :
:
                              *Defendant.*            :
------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

After an eight-day trial, a jury convicted defendant Paul Van Manen of conspiring to distribute and possess with intent to distribute one kilogram or more of heroin and a quantity of fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(C). *See* Jury Verdict Form, Dkt. 261. The jury also found that the use of these substances resulted in the serious bodily injury of Shaun Sullivan and the death of Michael Ogno. *Id.*

Van Manen moves for a new trial pursuant to Federal Rule of Criminal Procedure 33; and *pro se* argues that the presentation of certain evidence was misleading to the jury. The motions are DENIED.

## BACKGROUND

The indictment, filed on January 16, 2018, alleges that Paul Van Manen, along with other individuals, conspired to distribute heroin and fentanyl in the New York City area. Sealed Indict., Dkt. 1, ¶ 1; Supersed. Indict., Dkt. 108, ¶¶ 1–3. After an eight-day trial, the jury returned a guilty verdict, convicting Van Manen of conspiring to distribute heroin and fentanyl, resulting in the death of Michael Ogno and the serious bodily injury of Shaun Sullivan. Jury Verdict Form, Dkt. 261. On June 18, Van Manen's trial counsel advised this Court that Van Manen

would not be filing any post-trial motions. Letter, Dkt. 287.

After a hearing on June 30, the Court relieved Van Manen's former attorney as counsel, and Van Manen subsequently sought leave to file a motion for a new trial, despite the fact that more than 14 days had passed since the verdict. Opinion & Order, Dkt. 299; *see also* Fed. R. Crim. P. 33(b)(2) ("[A]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."). The Court found excusable neglect in Van Manen's failure to timely file a Rule 33 motion and permitted the Defendant's new counsel to review the record and file a motion for a new trial. Opinion & Order, Dkt. 299. Counsel filed his motion for a new trial on September 18. Motion, Dkt. 311.

Van Manen's Rule 33 motion argues that it was improper for this Court to preclude the testimony of Dr. Robert H. Powers, who the defense proposed to call as an expert in the field of forensic toxicology. Mem., Dkt. 312, at 1. Van Manen asserts that the preclusion of this witness constituted error because the defense was not required to give notice of the witness under Federal Rule of Criminal Procedure 16, and that even if notice was required, there was no prejudice to the Government. *Id.*, at 5. The Defendant argues that, had he been permitted to present the precluded witness, he "could have argued that narcotics from the charged conspiracy did not contribute to the death of Michael Ogno." *Id.*, at 6.

In his *pro se* motion, Van Manen asserts, *inter alia*, that the jury was misled at trial regarding the quantity of drugs; that Shaun Sullivan, a cooperating witness, gave testimony that misled the jury; and that Ogno could have died as a result of fentanyl-laced Xanax derived from a source other than Van Manen.

# DISCUSSION

I. **Standards**

   A. **Rule 33**

Federal Rule of Criminal Procedure 33 permits a court, upon motion by the defendant, to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The bar for granting a Rule 33 motion is a high one, and a court will order a new trial "only in extraordinary circumstances.'" *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (quoting *United States v. Torres*, 128 F.3d 38, 48 (2d Cir. 1997)). While the decision to grant a Rule 33 motion rests in the district court's discretion, "[t]he defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convicted." *Id.* (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)). In this Circuit, "[t]he 'ultimate test' is 'whether letting a guilty verdict stand would be a manifest injustice.'" *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (quoting *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005)).

A Rule 33 motion is not an opportunity for the district court to alter its general posture of deference "to the jury's resolution of conflicting evidence and assessment of witness credibility." *McCourty*, 562 F.3d at 475. The "exceptional circumstances" requiring the district court to interfere with the jury's weighing of the evidence arise, for "example . . . where testimony is 'patently incredible or defies physical realities.'" *Id.* at 476 (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). "[T]he trial judge's rejection of all or part of the testimony of a witness or witnesses does not automatically entitle a defendant to a new trial." *Sanchez*, 969 F.2d at 1414.

## B. Rule 702 and Rule 16

Federal Rule of Evidence 702 governs the testimony of expert witnesses, and permits an expert to testify as such where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. When a Rule 702 expert witness is to be presented in a criminal trial, the defense is required under Federal Rule of Criminal Procedure 16(b)(1)(C) to, "at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rule[] 702." Fed. R. Crim. P. 16(b)(1)(C). The disclosure must include a summary that "describe[s] the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* The defendant must make this disclosure where either the defendant has requested comparable disclosure of the government's expert witnesses and the government has complied, or where "the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition." Fed. R. Crim. P. 16 (b)(1)(C)(i)–(ii).

In all cases, the trial court is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

## II. Analysis

### A. Preclusion of Dr. Robert H. Powers

The Government notified the Defendant on April 1, 2019 that it planned to call both Dr. Terra Cederroth, the medical examiner who performed an autopsy on Ogno, and Dr. Leo J. Kadehjian, a toxicologist, as expert witnesses. Letter in Oppo., Dkt. 319, at 1. The Government

then moved on April 5 to preclude a proposed expert defense witness, Dr. Mark Taff. *Id.* The Defendant filed papers in opposition to the Government's motion on April 12, which included a brief statement that the Defendant "may call Robert H. Powers" as "an expert in the field of Forensic Toxicology," and appended Dr. Powers's curriculum vitae. Letter, Dkt. 191, at 3. On April 17, Van Manen provided the Government with Dr. Powers' resumé and a paragraph of disclosure that stated, in part, "we do not anticipate Dr. Powers' testifying," and that Dr. Powers would only be called "[t]o the extent that" Government expert witness "Dr. Kadehjian's testimony deviates from his report or with accepted science." Letter in Oppo., Dkt. 319, at 2.

The Government again contested the adequacy of the Defendant's disclosure regarding Dr. Powers at the final pretrial conference on April 23. Tr., Dkt. 245, at 24–25 ("Powers also doesn't explain why he has the opinion that he has."). At that conference, Van Manen's attorney said again that Dr. Powers' testimony would be introduced, if at all, "only to rebut something that came up that was at odds" with the findings of the Government's planned expert witnesses. *Id.* at 30. The Court found the parties were in "agreement that neither Dr. Taff nor Dr. Powers will be called to testify unless the Government's witnesses, the toxicologist and the medical examiner, depart from their already existing and previously filed opinions." *Id.* at 37. Neither party objected. *Id.*

Dr. Cederroth ultimately testified at trial. *See* Dec., Dkt. 313, Ex. H. The Government informed the Defendant on May 10, however, that it no longer planned to call Dr. Kadehjian; on May 12, Van Manen's counsel said that they planned to call Dr. Powers. Letter in Oppo., Dkt. 319, at 3. The Government renewed its motion to preclude Dr. Powers, and after hearing from the parties on May 13, this Court precluded the testimony of Dr. Powers. *Id.*; Tr., Dkt. 273, at 911–13.

Van Manen's attempts to re-open the preclusion of Dr. Powers at this stage are unavailing. Dr. Cederroth testified that fentanyl toxicity was the cause of Ogno's death, the same cause the defense said Dr. Powers would testify to if he had been called. *See* Letter in Oppo., Dkt. 319, at 3 ("Dr. Cederroth testified that fentanyl was the contributing factor in Michael Ogno's death."); Tr., Dkt. 273, at 912 ("We told the government our expert, we expect, will agree with what your expert is saying, that their expert report was defining the substances and then concluding that, based on those levels, it was not morphine, it was fentanyl toxicity.").

The Defendant's strongest argument rests on the fact that Rule 16 requires disclosure of defense expert witnesses to the Government where the defendant himself "requests" such disclosure from the Government, "and the Government complies." Fed. R. Crim. P. 16(b)(1)(C)(i). The Government appears to recognize this, arguing in response only that Van Manen did not contend that he "did *not* want to receive notice of the Government's experts before trial." Letter in Oppo., Dkt. 319, at 6 (emphasis in original). Assuming *arguendo* that the notice to the Government was sufficient for Rule 16 purposes here, it was still proper for the Court to preclude Dr. Powers' testimony, where Van Manen had repeatedly represented that Dr. Powers would be called only if the Government witnesses testified counter to their expected testimony or their filed reports.

Defense counsel had for more than a month equivocated regarding if and on what material Dr. Powers would testify, waiting until the last possible moment, in the midst of trial. Tr., Dkt. 245, at 24–25, 30. Such a belated attempt to introduce a novel expert witness is itself sufficient grounds for preclusion. *See United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (finding district court's decision to preclude experts was not an abuse of discretion where disclosures were "late" and "plainly inadequate"), *abrogated on other grounds, United States v.*

*Chambers*, 751 F. App'x 44, 46 (2d Cir. 2018); *United States v. Mahaffy*, No. 05-CR-613(S-3)(ILG), 2007 WL 1213738, at *1 (E.D.N.Y. Apr. 24, 2007); *United States v. Jasper*, No. 00 CR. 825 (PKL), 2003 WL 223212, at *5 (S.D.N.Y. Jan. 31, 2003) ("[D]efendant should be aware that the failure or delay in producing the written summary of an expert's testimony that defendant intends to use at trial has resulted in the preclusion of such evidence at trial."). The sparse submission Van Manen submitted to bolster Dr. Powers's credentials, in the face of repeated Government arguments for more, provided the Court with no basis for the Court to ensure that Dr. Powers's testimony would "rest on a reliable foundation" and be "relevant to the task at hand," *Daubert*, 509 U.S. at 597, or to inform the Government of the "witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C).

The Defendant claims that he "had been relying on the opportunity to cross examine the Government's toxicologist," and that he "intended to elicit from the toxicologist that the amount of heroin found in Michael Ogno's body was not sufficient, by itself, to kill him." Mem., Dkt. 315, at 5. Van Manen argues that, "Instead, the amount of fentanyl present in [Ogno's] body was extremely high and would have [been] fatal by itself." *Id.* Nothing prevented Van Manen from cross-examining Dr. Cederroth at trial as to the presence and amount of fentanyl in Ogno's blood, and where she agreed, in line with Van Manen's present contentions, that it constituted a "potentially fatal concentration of fentanyl." Tr., Dkt. 267, at 468. The jury in this case specifically found that the controlled substances Van Manen was guilty of conspiring to distribute involved both heroin and fentanyl. Jury Verdict Form, Dkt. 261, at 1–2. In other words, the jury did not need to find that the level of heroin alone in Ogno's body was what caused his death and the jury heard, from Dr. Cederroth, the testimony Van Manen says Dr.

7

Powers would have offered. As such, Dr. Powers' testimony at most would have been duplicative, and there can be no "real concern that an innocent person may have been convicted" on this basis. *Sanchez*, 969 F.2d at 1414.

The evidence presented against Van Manen clearly is not of the "patently incredible," nor does it "def[y] physical realities." *Id.*; *see also United States v. Cote*, 544 F.3d 88, 101 (2d Cir. 2008). The Defendant introduces no other reason to think the preclusion of Dr. Powers constitutes an "exceptional circumstance[]" or "injustice" that should cause this Court to abandon its deference to the jury and grant a Rule 33 motion for a new trial.[1] *Id.*

## B. *Pro Se* Motion

In addition to the Rule 33 motion filed by his counsel, Van Manen also submitted a five-page *pro se* document with the Court on September 19, 2019. Letter, Dkt. 314. "A document filed *pro se* is 'to be liberally construed,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and "interpreted 'to raise the strongest arguments that [it] suggest[s].'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

Recognizing the "'obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training,'" *Triestman*, 470 F.3d at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), this Court construes Van Manen's submission as supplementary to the Rule 33 motion

---

1. We here focused only on Ogno to determine there was support for the sentencing enhancement that applies when the controlled substance results in "death or serious bodily injury." 21 U.S.C. § 841(b)(1)(C). But here there is also proof — uncontested — that Sullivan suffered severe bodily injury as a result of the heroin and fentanyl that the jury convicted Van Manen of conspiring to distribute. *See* Jury Verdict Form, Dkt. 261, at 1–2.

filed by his counsel, and applies the same standard.[2]

In his *pro se* submission, Van Manen argues that certain presentations at trial misled the jury regarding the quantities of drugs involved; that the testimony of cooperating witness Shaun Sullivan misled the jury; and finally that a fentanyl-laced substance leading to Ogno's death could have been obtained from someone other than Van Manen.[3] None of these arguments rise to the level of ordering a new trial under Rule 33.

Van Manen points to a portion of the trial record that involves the admission of Government Exhibit 19, which consisted of 190 glassine envelopes seized from Van Manen and which tested positive for the presence of heroin. Letter, Dkt. 314, at 2; Tr., Dkt. 267, at 335–36. A stipulation regarding the contents of Exhibit 19 and that they were seized from Van Manen was read at trial and the Exhibit was entered into evidence without objection from Van Manen's

---

2. After Van Manen and his counsel "reached an impasse over what motions would be appropriate," this additional document was submitted against the advice of Van Manen's counsel. Letter, Dkt. 314, at 1.

3. The Government divides the arguments in Van Manen's *pro se* submission into five categories:

> First, Van Manen claims there was insufficient evidence concerning the amount of heroin that Van Manen personally dealt. (Dkt. 314 at 2). Relatedly, Van Manen argues that he did not purchase heroin from Medin Kosic from 2014–2017 and the weight of "heroin bundles" was incorrectly represented on a Government exhibit. (Dkt. 314 at 3–4). Second, Van Manen takes issue with cooperating witness Shaun Sullivan's credibility and asserts there was insufficient evidence to find that he consumed heroin prior to his overdose (which Van Manen characterizes as a "nod"). (Dkt. 314 at 3). Third, Van Manen argues that he did not provide Michael Ogno heroin on December 1, 2017. Fourth, that Dr. Cederroth's testimony was insufficient to prove that Ogno's death was a result of the drugs he ingested. Specifically, he claims the synergistic effect of all three drugs in Ogno's body caused his death. Fifth, Van Manen argues other may have provided Ogno the narcotics found in his body. (*Id.*)

Letter in Oppo., Dkt. 319, at 4.

trial counsel. Tr., Dkt. 267, at 336. Van Manen also points to a portion of the trial record regarding the calculation of a quantity of heroin. Tr., Dkt. 267, at 368. Van Manen offers no reason for the Court to interfere with the jury's assessment of this evidence as presented at trial.

Similarly, Van Manen's contentions regarding Sullivan's testimony would require the Court to improperly "overrid[e] the jury's credibility determinations." *United States v. Bell*, 584 F.3d 478, 485 (2d Cir. 2009). The jury weighed the evidence presented at trial regarding the cause of Ogno's death, and Van Manen fails to demonstrate "that the evidence failed to substantiate the jury's finding." *Id.*

## **CONCLUSION**

For the foregoing reasons, Defendant Van Manen's Rule 33 motion for a new trial and his *pro se* motion are DENIED. The Clerk of the Court is directed to close Dkts. 311 and 314.

Dated: New York, New York
October 11, 2019

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge