UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>PAUL VAN MANEN,<br>                                          Defendant | 18-cr-30 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Defendant Paul Van Manen moves the Court to vacate, set aside, or correct his criminal sentence, pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Van Manen's motion is DENIED.

## BACKGROUND

Following a jury trial before Judge Crotty, Van Manen was found guilty of conspiring to distribute and possess with the intent to distribute heroin and fentanyl resulting in serious bodily injury and death, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(b)(1)(C).

### I.     The Evidence at Trial

The evidence at trial established that Van Manen was a member of a drug-trafficking organization responsible for selling heroin and fentanyl. The organization obtained drugs from a supplier, who in turn distributed the drugs to coconspirators including Medin Kosic. Kosic then provided those drugs to Van Manen and others, including Shaun Sullivan, for further distribution. Tr. at 118–20, 522–23, 862, 873.

On October 4, 2017, Van Manen and Sullivan purchased heroin (that had been mixed with fentanyl) from Kosic. *Id.* at 139–143, 103. Van Manen picked up Sullivan in his car and drove to Kosic in Brooklyn. *Id.* at 140, 1273. Van Manen, who waited in the car, gave his money to Sullivan and Sullivan purchased 35 bundles of heroin: 15 for Van Manen and 20 for himself. *Id.* at 142–43, 1273. Van Manen used some of the heroin in the car. *Id.* at 1274. He then drove Sullivan back to Staten Island, dropping him off at Sullivan's brother's house. *Id.* Sullivan used two glassines of heroin and overdosed at a bed-and-breakfast behind his brother's house. *Id.* at 143, 1274. Sullivan was found unresponsive but was revived with Narcan. *Id.* at 47–48. Van Manen testified at trial that he knew Sullivan would use Kosic's heroin "[i]f he had nothing else." *Id.* at 1275.

The evidence at trial showed that on December 1, 2019, Van Manen sold drugs to Michael Ogno. *Id*. at 378–80, 1390–91. Later that day, Ogno was found dead in his home after an overdose. *Id*. at 724–29. Ogno's autopsy revealed that he had fentanyl, heroin metabolites, and alprazolam (Xanax) in his blood. Near Ogno's body, the police found a syringe and ten glassines with similarities to the ones Van Manen's organization distributed. *Id*. at 113–14, 149, 411, 770–76,

856. Six glassines contained solid material that tested positive for heroin and fentanyl. *Id*. at 841–44.

## II. Pretrial Proceedings Relating to Dr. Powers

Prior to trial, the government moved to exclude Van Manen's proposed expert witness, Dr. Mark Taff, from testifying. Dkt. 422-2 at 4–13. In an opposition brief, submitted on April 12, 2019, trial counsel for Van Manen mentioned for the first time that he may call another previously undisclosed expert. Van Manen stated: "Defendant Paul Van Manen may call Robert H. Powers, Ph.D., whose Curriculum Vitae accompanies this submission as Exhibit A. Dr. Powers is a Toxicologist and would be called as an expert in the field of Forensic Toxicology." Dkt. 422-3 at 4. The government objected in its reply brief, pointing out that the parties were "less than two weeks from trial" and "no further information concerning the scope of Dr. Powers' potential testimony was provided." Dkt. 422-4 at 2. The government argued that Van Manen had provided insufficient notice of Dr. Powers "because the scope of his testimony has not been disclosed, at all." *Id.*

On April 17, 2019, Van Manen's trial counsel provided the government a letter with respect to Dr. Powers, along with another copy of Dr. Powers's CV. Dkt. 422-5 to -6. The letter stated that counsel did "not anticipate Dr. Powers' [*sic*] testifying" and he would be called as a witness only "[t]o the extent that [the government's toxicology expert, Dr. Leo Kadehjian] deviates from his report or with accepted science." Dkt. 422-5 at 2. (The Government had disclosed two expert witnesses: Dr. Terra Cederroth, a medical examiner, and Kadehjian, a forensic toxicologist.) Trial counsel further stated that, if called as a witness, Dr. Powers would "testify that the concentration of fentanyl being detected at a fatal concentration is the major contributor to toxicity and the proximate cause of death." *Id.*

The Court held a hearing on the motion. Van Manen's trial counsel responded that his experts (including Dr. Powers) would only be called to testify if the government's experts did not testify consistently with their reports. Dkt. 422-7 at 30:9–31:11. Based on that representation, the Court stated that "I think we have agreement" that Van Manen's experts would not be "called to testify unless the government's witnesses, the toxicologist and the medical examiner, depart from their already existing and previously filed opinions." *Id.* at 37:6–10. Trial counsel did not object to or otherwise take issue with Judge Crotty's description of the state of play.

## III. The Presentation of Experts at Trial

At trial, the government called Dr. Cederroth. Tr. at 445. Cederroth testified regarding Ogno's toxicology report. *Id.* at 463:10–466:10. She said the results indicated that Ogno had low levels of morphine in his system, along with alprazolam (Xanax), heroin, and fentanyl. *Id.* at 466:11–468:9. Cederroth testified that "any fentanyl present is enough to explain death," and the amount in Ogno's system (even without considering the combined effects of heroin or other drugs) was fatal. *Id.* at 468:12–19. Cederroth testified that Ogno's cause of death was "an acute intoxication by the combined effects of heroin, fentanyl, and alprazolam." *Id.* at 470:23–24.

2

On cross examination, Cederroth admitted that she did not know how any of the drugs had been administered and could not tell whether Ogno had injected the fentanyl and heroin together or separately. *Id.* at 478:14–24. She stated that there "is no way to tell if [the fentanyl and heroin] were injected together or separately, but they were all present in or around the time of death, so they were all taken within a short amount of time before death." *Id.* at 479:2–5. She said it was not possible to tell the "order or sequence of these three drugs." *Id.* at 479:6–8. Cederroth also said that "the combination of all the drugs is what killed Michael Ogno," but alprazolam (Xanax) alone "usually will not cause death," whereas "any quantity, even small, of fentanyl or heroin can cause overdose and death." *Id.* at 480:1–8. On redirect, Cederroth again confirmed that she could not tell whether the drugs were taken together or separately. *Id.* at 480:22–24.

On May 10, 2019, in the middle of trial, the government said that it did not intend to call Dr. Kadehjian, the forensic toxicologist it had noticed as a potential expert. On May 12, 2019, Van Manen's trial counsel emailed the government stating that "[s]ince the government is no longer calling a toxicology expert," Van Manen "plan[s] to call Dr. Powers." Dkt. 422-13. The same day, the government renewed its motion to preclude Dr. Powers from testifying. During a hearing the next day, the government stated that preclusion was appropriate because the government's medical examiner "testified entirely consistently with her report, exactly as expected," so there was no explanation for why Van Manen needed to call his expert. Dkt. 422-15 at 911:7–18. The government also argued that there was "no excuse for the deficient expert notice that has been provided for Dr. Powers" and that counsel had "not cured that inadequate notice." *Id.* at 911:19–25. Van Manen's counsel argued that the government had not called its toxicologist (which was the basis for counsel's representation that it would not need to call Dr. Powers) and that its expert would state that "based on [Ogno's] levels, it was not morphine, it was fentanyl toxicity." *Id.* at 912:13–25. The Court ruled that "[f]or the reasons stated by the government, Dr. Powers' testimony is precluded." *Id.* at 913:1–3.

### IV.   Jury Instructions Relevant to the Serious Bodily Injury Enhancement

As relevant to Van Manen's motion, Judge Crotty instructed the jury as follows:

> Count One of the indictment also charges, with respect to Mr. Van Manen only, that the use of drugs distributed through the conspiracy resulted in the serious bodily injury of Shaun Sullivan on or about October 5, 2017, and the death of Michael Ogno on or about December 1, 2017. Thus, only if you find Mr. Van Manen guilty of Count One, will you then be asked to make two separate findings.
>
> First, you will be asked to find whether the government has proved beyond a reasonable doubt that Shaun Sullivan's use of heroin and/or fentanyl distributed through the conspiracy resulted in serious bodily injury to Mr. Sullivan, and second, you will be asked to find whether Michael Ogno's use of heroin and/or fentanyl distributed through the conspiracy resulted in his death or serious bodily injury.
>
> With respect to both the serious bodily injury and the death, you must also decide whether either Mr. Van Manen or a co-conspirator for whose conduct Mr.

Van Manen would be accountable actually distributed drugs to Sullivan and Ogno. Your findings must be unanimous.

As with the types of drugs involved, the government need not prove that the heroin and/or fentanyl distributed through the conspiracy resulted in both the serious bodily injury of Shaun Sullivan and the death or serious bodily injury of Michael Ogno. Instead, you should consider each question separately—that is, whether the heroin and/or fentanyl distributed through the conspiracy resulted in the serious bodily injury of Shaun Sullivan, and separately, whether the heroin and/or fentanyl distributed through the conspiracy resulted in the death or serious bodily injury of Michael Ogno. On each of these questions, you may only enter that special finding if you are unanimous, that is, if all of you are in agreement with respect to whether either the serious bodily injury or the death was caused by heroin and/or fentanyl distributed through the conspiracy.

I instruct you that in order to find the serious injury or death of a particular individual resulted from the use of heroin and/or fentanyl distributed through the conspiracy, you must find that the government has proven that heroin and/or fentanyl distributed by Mr. Van Manen or a co-conspirator was the cause of the alleged victim's serious bodily injury or death. In other words, the government must prove that the alleged victim would not have suffered a serious bodily injury or died on the date he did, but for the ingestion of the heroin and/or fentanyl distributed by Mr. Van Manen or one of his co-conspirators.

To be clear, the government is not required to show that the heroin and/or fentanyl distributed through the conspiracy was the only factor that brought about the alleged victim's serious bodily injury or death. Indeed, it can be sufficient if the heroin and/or fentanyl distributed through the conspiracy caused the alleged victim's serious bodily injury or death in combination with other causes, so long as you find that the government has proven that the individual in question would not have suffered a serious bodily injury or died on the date he did, absent his ingestion of the heroin and/or fentanyl distributed through the conspiracy. Put another way, you must decide whether the incremental effect of the heroin and/or fentanyl was the straw that broke the camel's back in causing the serious bodily injury or death of the victim or victims.

You must also consider whether the victim you are considering in fact suffered a serious bodily injury or death.

With respect to the allegation that Shaun Sullivan suffered a serious bodily injury, that means you must consider whether the government proved beyond a reasonable doubt that the heroin and/or fentanyl distributed by the conspiracy placed Shaun Sullivan at a substantial risk of death, caused him protracted and obvious disfigurement, or caused protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

With respect to the allegation that Michael Ogno died, that means you must consider whether the government proved beyond a reasonable doubt that Ogno in fact died on or about the date alleged in the indictment.

> Only if you find that the victim would not have suffered a serious bodily injury or died, but for his ingestion of heroin and/or fentanyl supplied as part of the conspiracy charged in Count One, must you then consider whether Mr. Van Manen is responsible for that serious bodily injury or death.
>
> Mr. Van Manen is responsible for the victim's serious bodily injury or death only if either one of two conditions has been proven: First, if Mr. Van Manen personally and directly participated in the transaction that resulted in the victim's serious injury or death; or, second, the distribution of the heroin and/or fentanyl that caused the victim's serious bodily injury or death was either known to Mr. Van Manen or was reasonably foreseeable to him, and was within the scope of the criminal activity that he jointly undertook. If you find either of those to be true, this requirement is met.

Tr. at 1586:11–1589:24.

During the charge conference, Van Manen's trial counsel objected to these instructions, stating:

> [W]e are aware circuits have ruled on the issue of foreseeability in connection with death resulting, but the Second Circuit hasn't. So we would request the additional language be added requiring that serious injury and death were foreseeable to the defendant, whether he was directly participating in the transaction or not. To hold the defendant responsible for death resulting without this requirement is simply at odds with due process and fundamental fairness, your Honor.

Tr. at 1346:10–18. The government responded by arguing that it believed the "correct law" was that "the distribution had to be foreseeable, but that the death or serious bodily injury did not have to be foreseeable to the defendant." *Id.* at 1347:21–23. Judge Crotty stated that he was going to leave the instructions as included above. *Id.* at 1348:1. Defense counsel did not offer any further objections to the above instructions.

### V.  Van Manen's Conviction, Sentencing, and Direct Appeal

Van Manen was found guilty of conspiring to distribute and possess with the intent to distribute one kilogram or more of heroin and a quantity of fentanyl, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(C). The jury also found that the use of the substances resulted in serious bodily injury to Sullivan and death to Ogno, each of which independently triggered a mandatory twenty-year sentence. Van Manen's sentencing-guidelines range was 360 months to life. Dkt. 329 at 29. Judge Crotty imposed a custodial sentence of 276 months. *Id.*

Van Manen appealed his conviction. In relevant part, he argued that the district court erred in precluding Dr. Powers from testifying. The Second Circuit rejected this argument and affirmed Van Manen's conviction. *United States v. Van Manen*, 852 Fed. App'x 564 (2d Cir. Apr. 20, 2021). The Court held that the trial court "acted well within its discretion" in precluding Dr. Powers from testifying. *Id*. at 566. The Court noted that "Van Manen failed to provide any basis for Dr. Powers's opinions and any explanation as to how they were reached" and that "admission of his expert's testimony would have been cumulative" because Van Manen had "not shown any meaningful

5

difference between his expert's proposed testimony and that of the Government's medical examiner regarding the mix of heroin and fentanyl that killed Ogno." *Id.*

Van Manen—represented by different counsel—now moves the court for relief pursuant to § 2255. Relevant to Ogno's death, Van Manen argues that his counsel was ineffective for failing to timely serve an expert disclosure for Dr. Powers, who according to Van Manen would have provided testimony that the drugs sold by Van Manen could not have caused Ogno's death. As to Shaun Sullivan's overdose, Van Manen argues that trial counsel was ineffective for failing to object to the Court's allegedly erroneous charge on serious bodily injury.

In connection with his motion, Van Manen submitted an affidavit from Powers. Dkt. 430-1. The affidavit states that, if called to testify, Powers's "opinions as to the contributing factors in Mr. Ogno's cause of death would have differed from those of Dr. Cederroth" insofar as he "would have said that the levels of morphine and the heroin metabolite, 6-monoacetylmorphine[,] were so low as to indicate use of that drug well prior to the actual eventual death, and survival of that use by Mr. Ogno." *Id.* ¶ 5. According to Powers, he would have opined that "the level of fentanyl determined to have been in Mr. Ogno at the time of his death is consistent with an immediate prior use" and provides "an adequate explanation for death in the absence of all the other drugs determined to have been present." *Id.* At oral argument, Van Manen's counsel conceded that other than Dr. Powers's affidavit, Van Manen had no further evidence to submit on the motion.

## LEGAL STANDARDS

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States … may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255(b). The Second Circuit has "interpreted the requirement that the court 'make findings of fact and conclusions of law' as requiring the court to set out its findings." *Clanton v. United States*, 284 F.3d 420, 426 (2d Cir. 2002).

"Although a District Court must hold an evidentiary hearing when presented with any potentially meritorious claim under section 2255, a hearing is not required when, viewing the evidentiary proffers and record in the light most favorable to the [movant], it is clear that the [movant] has failed to establish a plausible claim of ineffective assistance of counsel." *Lake v. United States*, 465 F. App'x 33, 34–35 (2d Cir. 2012) (cleaned up).

## DISCUSSION

Van Manen argues that his trial counsel was ineffective for failing to provide a legally sufficient expert disclosure and failing to object to the Court's supposedly erroneous jury charge on serious bodily injury. To prove ineffective assistance, Van Manen must demonstrate that defense counsel provided objectively deficient representation and that Van Manen suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To satisfy the first

prong—the performance prong—the record must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (internal quotation marks omitted). "Under the second prong—the prejudice prong—a 'reasonable probability' of a different result is a 'probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

### I. Expert Disclosure

According to Van Manen, his counsel's failure to provide an adequate expert disclosure for Dr. Powers was objectively unreasonable because it prevented Van Manen from having any expert testify in his defense. Van Manen also argues that he was prejudiced by counsel's failure because "Powers' testimony about the levels of different drugs found in Ogno's system was crucial to Petitioner's … argument that the narcotics that killed Ogno came from a source other than Van Manen." Dkt. 422 at 24. According to Van Manen, Powers's testimony would have allowed defense counsel to argue that "Ogno had run out of heroin, and obtained fentanyl or fentanyl-laced drugs from a later, different source." *Id.*

"A defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel bears a heavy burden." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). The defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694). "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington*, 562 U.S. at 104 (cleaned up).

Van Manen cannot meet this standard. He says that Powers would have testified that fentanyl toxicity was the proximate cause of Ogno's death. Dkt. 422 at 17. According to Van Manen, this testimony was necessary to bolster the defense's argument that Ogno obtained the drugs that killed him from someone other than Van Manen or his co-conspirators. Dkt. 422 at 17, 23; *see also* Dkt. 431 ("[Dr. Powers's] expert opinion that heroin and fentanyl were ingested separately by the deceased, and not together as a mixture, if credited, would have rebutted the government's positions, and challenged the jury to examine the entirety of the case evidence to consider whether the fatal fentanyl came from a drug source completely different from that which Van Manen was distributing.").

But Cederroth's testimony was not inconsistent with Powers's proposed testimony. For one thing, Cederroth conceded that the fentanyl level detected was fatal. Tr. at 468:5–19. She also said that she could not tell whether the fentanyl and heroin were injected separately or together or the

7

order of sequence of the three drugs. *Id.* at 478:14–479:5. She never claimed that the drugs were ingested together.

To be clear, Cederroth's testimony was not the same as Powers's proposed testimony. Cederroth testified that it was the combined effects of the drugs that caused Ogno's death and that it was not possible to tell the order or sequence of Ogno's use of the three drugs. Tr. at 470:23–24, 479:6–8. Powers's affidavit, on the other hand, indicates that he "would have said that the levels of morphine and the heroin metabolite, 6-monoacetylmorphine[,] were so low as to indicate use of that drug well prior to the actual eventual death, and survival of that use by Mr. Ogno." Dkt. 430-1 ¶ 5. He also says that he could tell the order or sequence of Ogno's use of the three drugs: "the level of fentanyl determined to have been in Mr. Ogno at the time of his death is consistent with an immediate prior use" and provides "an adequate explanation for death in the absence of all the other drugs determined to have been present." *Id.*

But the question on this motion is not whether Powers's testimony would have introduced some new evidence for the jury to consider. Instead, the question is whether there is a "reasonable probability" that this new evidence would have made "the result of the proceeding … different." *Strickland*, 466 U.S. at 694. And on that question the answer is no. Van Manen's trial counsel already had a sufficient basis to argue that the drugs were ingested separately and that the fentanyl (which Cederroth admitted was at a fatal level, and which she could not confirm was ingested together with the heroin) came from a different source and was what ultimately killed Ogno. So the fact that Powers was not permitted to testify did not prevent trial counsel from arguing at trial that Van Manen was not the source of the drugs that killed Ogno.

The cases cited in Van Manen's briefing are distinguishable because those cases involve lawyers who entirely failed to present a critical argument to the jury. For example, in *United States v. Melhuish*, 6 F.4th 380 (2d Cir. 2021), the Second Circuit remanded an ineffectiveness claim for further fact finding when trial counsel failed to pursue an insanity defense (including by failing to offer expert evidence on the defendant's mental illness) despite the defendant's "documented mental health condition" including "psychotic delusions" and "signs of significant mental illness on the night" of the crime. *Id.* at 397, 400. The potential prejudice did not result from the lack of expert witness testimony alone, but the failure to pursue a critical defense more generally. Similarly, in *Gersten v. Senkowski*, 426 F.3d 588 (2d Cir. 2005), the Second Circuit held that counsel was ineffective in a child sex abuse case when he "failed to call as a witness, or even to consult in preparation for trial and cross-examination of the prosecution's witnesses, any medical expert on child sexual abuse." *Id.* at 607–08. It was not the failure to call an expert alone that caused prejudice. Instead, prejudice resulted because the record made clear that, had any investigation been conducted, counsel would have learned that "the prosecutor's physical evidence … provided no corroboration whatsoever of the alleged victim's story" and counsel would have been able to present "a strong affirmative case that the charged crime did not occur" *Id.* at 608; *see also United States v. Nolan*, 956 F.3d 71, 81 (2d. Cir. 2020) (counsel was ineffective for abandoning his motion to exclude the eyewitness identification without even consulting an expert

8

on eyewitness identification). (At oral argument, Van Manen's counsel confirmed he had no additional authorities to support his argument.)

Unlike in those cases, trial counsel did not entirely fail to raise a critical argument. Instead, trial counsel here *repeatedly* made the argument during closing statements that someone other than Van Manen sold Ogno the drugs that killed him. *See* Tr. at 1482:17–24 ("You do know that Michael Ogno had several sources, several sources. It looks like he dealt with Angel on that day. But Derek, his own brother, apparently his mom, others. He was a junkie. He had to have heroin every day. He had to have heroin every four hours. There is no indication from the testimony and the evidence that Paul Van Manen serviced him in that manner that he could keep up that. He had to have other sources."); *id.* at 1483:20 ("We don't know from whom he was getting drugs."); *see also id.* at 1443:4–6, 1475:3–4, 1482:11–12. So while trial counsel did not obtain expert testimony indicating that the heroin and fentanyl were ingested separately (and therefore might have come from different dealers), he did present other evidence and argument on the issue.

It's also not surprising that the jury rejected the argument that Ogno purchased the drug that killed him from a different source given the factual record in the case: Next to Ogno's body, police found ten glassines that resembled the glassines sold by Van Manen's drug-trafficking organization and that tested positive for heroin and fentanyl. Tr. at 113–14, 149, 411, 770–76, 841–44, 856. Four of the glassines appeared to have been used, while six contained solid material. Plus, there was no evidence of any other drug found in the locked room where Ogno died. In addition, there was evidence that Ogno purchased drugs from Van Manen the day of his overdose. *Id*. at 378–80, 1390–91.

Add to this that Van Manen was found guilty of participating in a conspiracy to distribute heroin and fentanyl. Dkt. 261. So a finding that Ogno died of fentanyl, rather than heroin, would not undermine the jury's finding, unless there was some evidence that Ogno purchased fentanyl from someone other than Van Manen. And Powers could not testify to this critical factual issue, which was also not supported by the rest of the factual record. So even if Powers had been permitted to testify that Ogno had survived his heroin use and then overdosed from ingesting fentanyl, the evidence was still only consistent with a finding that Van Manen (who was aware that the heroin his drug-trafficking organization sold was mixed with fentanyl, Tr. at 1251) was the source of this drug.[1]

"In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) (quoting *Strickland*, 466 U.S. at 695). Under the totality of the evidence here, the Court cannot say that counsel's failure to properly serve notice of its proposed expert was prejudicial in the *Strickland* sense. Powers's testimony was not necessary for Van Manen's argument (which was in fact made repeatedly) that Ogno's death was

---

[1] To be sure, the evidence at trial indicated that Van Manen's drug-trafficking organization sold heroin mixed with fentanyl, rather than pure fentanyl. But Powers's affidavit does not state that any lethal dose of fentanyl could not have been ingested in a mixture that contained a small percentage of heroin and a large percentage of fentanyl. Simply put, Powers's affidavit doesn't provide a basis for the jury to conclude that whatever mixture of drugs Van Manen sold Ogno that day was not what killed Ogno.

caused by drugs sold by someone else. And the factual record in the case undermined Van Manen's argument that Ogno had overdosed after taking drugs purchased from some other unknown source. *See Waiters v. Lee*, 857 F.3d 466, 481–82 (2d Cir. 2017) (failure to retain medical expert was not prejudicial under *Strickland* when other evidence in the case "overshadowed" the expert's proposed testimony); *Walters v. United States*, 2022 WL 890906, at *7 (S.D.N.Y. Mar. 25, 2022) (Nathan, J.) (failure to offer additional expert testimony at sentencing was not prejudicial under *Strickland* because there "is not a substantial likelihood that superior expert testimony would have altered the Court's finding").

## II. Jury Charge

Van Manen next seeks relief for ineffective assistance of counsel based on trial counsel's failure to make the right objections to jury instructions related to Sullivan's drug overdose. (Van Manen's trial counsel did object to the Court's instruction, just not on grounds advanced by Van Manen here.) Van Manen says that these instructions were erroneous because they permitted the jury to hold Van Manen responsible for Sullivan's injuries without finding "but-for" causation. Van Manen says this violates the Supreme Court's holding in *Burrage v. United States*, 571 U.S. 204 (2014). But the jury instructions correctly communicated the *Burrage* standard.

In *Burrage*, the Supreme Court explained that § 841(b)(1) requires "death to 'result from' use of the unlawfully distributed drug, not from a combination of factors to which drug use merely contributed." *Id.* at 216. In other words, the statute has a "but for" requirement. The Second Circuit has explained that "*Burrage* distinguished between instances in which the defendant's narcotics trafficking 'merely played a nonessential contributing role' in the death, which does not suffice to establish causation, and instances in which the 'incremental effect' of the drugs was the 'straw that broke the camel's back,' which does suffice." *United States v. Sica*, 676 F. App'x 81, 84 (2d Cir. 2017) (quoting *Burrage*, 571 U.S. at 211–12).

Here, the instructions comply with *Burrage*'s holding. Judge Crotty instructed the jury as follows:

> With respect to the allegation that Shaun Sullivan suffered a serious bodily injury, that means you must consider whether the government proved beyond a reasonable doubt that the heroin and/or fentanyl distributed by the conspiracy placed Shaun Sullivan at a substantial risk of death, caused him protracted and obvious disfigurement, or caused protracted loss or impairment of the function of a bodily member, organ, or mental faculty.
>
> With respect to the allegation that Michael Ogno died, that means you must consider whether the government proved beyond a reasonable doubt that Ogno in fact died on or about the date alleged in the indictment.
>
> Only if you find that the victim would not have suffered a serious bodily injury or died, ***but for*** his ingestion of heroin and/or fentanyl supplied as part of the conspiracy charged in Count One, must you then consider whether Mr. Van Manen is responsible for that serious bodily injury or death.

> Mr. Van Manen is responsible for the victim's serious bodily injury or death only if either one of two conditions has been proven: First, if Mr. Van Manen personally and directly participated in the transaction *__that resulted in the victim's serious injury or death__*; or, second, the distribution of the heroin and/or fentanyl *__that caused the victim's serious bodily injury or death__* was either known to Mr. Van Manen or was reasonably foreseeable to him, and was within the scope of the criminal activity that he jointly undertook. If you find either of those to be true, this requirement is met.

Tr. at 1588:23–1589:24 (emphasis added). These instructions repeatedly inform the jury that the drugs must have "caused" the victim's injuries and that they can only convict Van Manen if the injury would not have resulted "but for" the victim ingesting the drugs. Judge Crotty also specifically used the Second Circuit's language, instructing the jury that they must determine "whether the incremental effect of the heroin and/or fentanyl was the straw that broke the camel's back in causing the serious bodily injury or death of the victim or victims." *Id*. at 1588:16–20.

Van Manen also points out that other circuits have adopted a "chain of distribution" requirement before a court may apply the death or serious bodily injury enhancement to § 841 conspiracy convictions. For example, the Sixth Circuit has held that a district court can only impose a sentencing enhancement under § 841 if the jury finds that the defendant was "part of the distribution chain" of the drugs that harmed the victim. *United States v. Sadler*, 24 F.4th 515, 560 (6th Cir. 2022). In that case, the district court had instructed the jury that if they found "that the distribution of Heroin or Fentanyl causing the serious bodily injury or death was in furtherance of the conspiracy and was committed by or reasonably foreseeable" to the defendant, the jury may find that the drugs "caused a serious bodily injury or death." *Id.* at 561. The Sixth Circuit held that these instructions were "plainly err[oneous]" because they "omitt[ed] a chain-of distribution instruction." *Id.* at 563.

But, as both parties agree, the Second Circuit has not adopted this chain-of-distribution requirement. *See* Dkt. 446 at 1 ("The Second Circuit has never adopted a 'chain of distribution' requirement."); Dkt. 447 at 2 ("[T]he Second Circuit has not meaningfully joined the chain of distribution conversation, either for or against."). This would alone foreclose habeas relief since "[c]ounsel is not required to forecast changes in the governing law." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *see also United States v. Choudhry*, 330 F. Supp. 3d 815, 856 (E.D.N.Y. 2018) (collecting cases) *aff'd*, 813 F. App'x 4 (2d Cir. 2020); *Tellado v. United States*, 745 F.3d 48, 55 (2d Cir. 2014). "Counsels' failure to raise … this [jury] instruction, which was not contrary to circuit law at the time, was not ineffective." *Romero v. United States,* 2001 WL 921167, at *10 (S.D.N.Y. Aug. 15, 2001), *aff'd*, 118 F. App'x 528 (2d Cir. 2004).

Even if counsel's failure to object to these instructions was deficient performance, Van Manen would not be able to demonstrate prejudice under *Strickland*. Van Manen has not explained why any "chain of distribution" requirement was not met here: Van Manen drove Sullivan in Van Manen's car so they could both pick up heroin, Van Manen gave Sullivan his money so Sullivan could purchase heroin on Van Manen's behalf, and then Van Manen drove Sullivan to a location where Sullivan overdosed nearby. Tr. at 140–143, 1273–74. Van Manen does not raise any

11

argument that these actions would not satisfy the chain-of-distribution requirement. *See Rajaratnam v. United States*, 2017 WL 887027, at *4 (S.D.N.Y. Mar. 3, 2017) (denying ineffectiveness claim because "any error in the jury instructions was harmless"), *aff'd*, 736 F. App'x 279 (2d Cir. 2018).

Van Manen has not identified any valid claim based on counsel's failure to object to the jury instruction on serious bodily injury. The instruction he desires was based on a construction of law that has not been adopted by the Second Circuit, and Van Manen has not demonstrated that he was prejudiced.

## CONCLUSION

Even viewing Powers's affidavit and the record in the light most favorable to Van Manen, Van Manen cannot meet his burden of establishing a plausible claim of ineffective assistance. Van Manen's § 2255 motion is therefore DENIED. Van Manen asks the Court to excuse his late-filed reply brief and to expand the record to include Powers's affidavit and CV. Both motions are granted.

The Clerk of Court is directed to terminate Dkts. 420, 421, 430, and 432.

SO ORDERED.

Dated: August 23, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge